UNITED STATES, Appellee

v

JOHN A. BRADY, Private E–1, U. S. Army, Appellant

8 USCMA 456, 24 CMR 266

No. 9594

Decided December 13, 1957

*First Lieutenant Gene E. Overbeck* argued the cause for Appellant, Accused. With him on the brief was *Major Frank C. Stetson.*
*Captain Thomas J. Nichols* argued the cause for Appellee, United

States. With him on the brief were *Lieutenant Colonel Thomas J. Newton* and *First Lieutenant James G. Duffy*.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal brings up for review the correctness of the law officer's ruling admitting into evidence three depositions on behalf of the prosecution.

The accused was charged with desertion terminated by apprehension. He was absent for approximately one and one-half months. The charge sheet listed two witnesses for the prosecution, both of whom were in the accused's organization. In the pretrial investigation, statements from these and two defense witnesses were submitted. In addition, the investigating officer examined three documents which he appended to his report as exhibits. The first was an extract copy of entries in the Morning Report of the accused's unit, which, in part, showed that he had been apprehended in Paris and later transferred to the provisional guardhouse in Stuttgart, Germany, the location of his organization; the second was a completed form entitled "Enlisted Personnel Data"; and the third was a record of previous convictions. On April 10, 1956, the investigating officer filed his report in which he recommended trial by general court-martial.

Four days after the investigating officer submitted his report, the charges were served upon the accused. On the same day, April 14, 1956, his appointed defense counsel was verbally notified by trial counsel that oral depositions would be taken from "six possible witnesses" in Paris, and "any other people who might throw light on this case." Defense counsel objected to the procedure. He contended that the only material information in the file available to him consisted of the Morning Report entries and a Criminal Investigations Detachment statement in which the important part was a paragraph referring to the accused's apprehension, and which noted that he had made an incriminating statement. Defense counsel maintained that, in view of the meager information he had, to take the depositions of "possible" witnesses in accordance with the proposed procedure would, in effect, be a trial of the accused "in absentia." He requested that the potential witnesses be brought to Stuttgart, a distance of about 350 miles from Paris; or that he and the accused be allowed to go to the latter city for the taking of their depositions. Trial counsel agreed. However, the defense request was denied by the staff judge advocate. On April 19, in a formal motion for appropriate relief addressed to the convening authority, but routed through the staff judge advocate, the defense counsel again objected to the procedure and renewed his request for permission to be present with the accused at the taking of the depositions. This motion was denied by the staff judge advocate, and there is nothing to show that it was acted upon by the convening authority.

In the latter part of May, oral depositions were taken from three persons in Paris. Two officers were designated by the Commanding Officer of Seine Area Command to represent the prosecution and the accused, respectively. The prosecution lawyer was a member of the Judge Advocate General Corps, and the defense attorney, Captain Falkenstrom, was an infantry officer certified in accordance with Article 27(b), Uniform Code of Military Justice, 10 USC § 827. As far as the record shows, Captain Falkenstrom never communicated with the accused, who was in confinement in Stuttgart. According to trial defense counsel, the accused never saw Captain Falkenstrom, never consulted with him, and never consented to his appointment as his attorney for the depositions. Sometime after the denial of his formal motion objecting to this procedure, trial defense counsel prepared a memorandum for "the person who would be representing the accused." He did so "under protest since that was the situation that was going to take place," and he believed that it might possibly help the accused. However, he had never seen any statements from the

458

prospective witnesses, and he did not know what questions would be put to them. As a result, he felt that he did not accomplish "very much" by his memorandum.

At the trial, defense counsel objected to the admission in evidence of three depositions. One of the grounds of his objection was that they were improperly taken. In support of his objection he testified to substantially all of the matters set out above. His testimony is uncontradicted.

In the absence of consent or waiver, depositions are inadmissible in evidence unless they satisfy the requirements prescribed by law. United States v Drain, 4 USCMA 646, 16 CMR 220; United States v Young, 2 USCMA 470, 9 CMR 100; United States v Barcomb, 2 USCMA 92, 6 CMR 92. Tested by that standard, the depositions in this case are inadmissible.

Article 49 of the Uniform Code, 10 USC § 849, provides that if a deposition is to be taken "before charges are referred for trial," a competent court-martial authority can designate officers to represent the parties. The reason for this provision is readily apparent. Until the charges are referred to trial, the accused usually has no counsel, and "technically no person represents the Government." Feld, A Manual of Courts-Martial Practice and Appeal, § 36 (1957); see also Everett, Military Justice in the Armed Forces of the United States, page 223 (1956). Significantly, however, Article 49 confers no like authority for the taking of a deposition *after* the charges are referred for trial. On reference of the charges to trial, both parties have counsel, and, consequently, Congress unquestionably expected that there would be no need for the appointment of separate counsel for the taking of a deposition. Whether we are correct in this assumption, however, is immaterial. In unequivocal language, Congress limited the right of a court-martial authority to designate counsel for the taking of a deposition. His power is restricted to a case in which the charges have not yet been referred to trial. By clear implication, Article 49 precludes the designation of counsel for a deposition after the charges are sent to trial and the parties are already represented by counsel.

The Manual for Courts-Martial, United States, 1951, implies that the power to designate separate counsel for the taking of the deposition exists even after reference of the charges to trial. Paragraph 117*g*. Thus it provides that:

"If, after charges are referred for trial, depositions are to be taken on oral examination rather than on written interrogatories, each party concerned will indicate in a separate letter or memorandum the reasons for the deposition and the points desired to be covered in the oral examination of the witness. . . .

"Upon receipt of the approved letters or memoranda, the commanding officer or other person to whom the papers are sent, as contemplated in subparagraph *c* above, will, whenever practicable, in addition to designating a person authorized by law to administer oaths to take the deposition, detail officers, preferably officers experienced in the duties of trial counsel and defense counsel, respectively, to represent both sides in propounding the oral questions which upon being propounded will be reduced to writing as will the answers thereto."

To the extent that this provision fails to distinguish between the power to designate counsel *before* charges are referred to trial and the power to do so after the reference, it is contrary to Article 49, and it is invalid. United States v Lampkins, 4 USCMA 31, 15 CMR 31. Neither United States v Parrish, 7 USCMA 337, 22 CMR 127, nor United States v Sutton, 3 USCMA 220, 11 CMR 220, is contra to this conclusion. The question was not considered in those cases. Also, we were concerned with written interrogatories in which counsel appointed to represent the accused, and who prepared or examined the interrogatories, were the

same as those appointed for the trial. Finally, in the *Parrish* case, the interrogatories were prepared before the charges were referred to trial and the accused had a civilian attorney who participated in their preparation.

It is arguable that, despite the absence of power, a designation of counsel for the taking of a deposition is effective if consented to by the accused. In other words, an accused can affirmatively establish an attorney-client relationship with the designated representative, and thereby become bound by the appropriate acts of the latter. See United States v Cambridge, 3 USCMA 377, 382, 12 CMR 133. However, an attorney-client relationship is not created by the mere designation of a representative for the accused by a court-martial authority. United States v Nichols, 8 USCMA 119, 23 CMR 343. There must be an acceptance of the appointment by the accused. Here, the uncontradicted evidence shows that the designated counsel never consulted or communicated with the accused. Nor does it appear that he attempted to communicate with the accused's trial attorney. True, the latter forwarded a memorandum to the "person who would be representing the accused," but he had no knowledge of who the witnesses would be or what questions they would be asked. In any event, he submitted his memorandum "under protest." Moreover, his only knowledge of the qualifications of designated counsel came from the recitals in the depositions and from a telegram, the addressee of which is undisclosed. It cannot, therefore, be said that trial defense counsel, acting for the accused, approved Captain Falkenstrom's appointment as "of counsel" for the taking of the deposition. The evidence shows that no attorney-client relationship was established between the accused and Captain Falkenstrom.

Another serious deficiency appears in the procedure under which the depositions were taken. The Manual for Courts-Martial provides that if an oral deposition is desired after charges are referred to trial the party seeking the deposition:

". . . will indicate in a separate letter or memorandum the reasons for the deposition and the points desired to be covered in the oral examination of the witness. Subsequent to submission to and inspection by opposing counsel, the papers will be submitted to the convening authority. . . ." [Paragraph 117*g*.]

The record contains no such letter or memorandum. On the contrary, it appears that none was submitted. Defense counsel testified without contradiction that he was "verbally" informed of the fact that depositions would be taken by the judge advocate general personnel in Paris. He also stated that he had no knowledge of the questions that would be asked the witnesses. Although a legitimate distinction can be drawn between the "points desired to be covered" in the depositions and the specific questions to be put to the witnesses, defense counsel's testimony strongly implies that he did not know of the "points." The inference is fortified by the fact that the prosecution did not merely propose to take the testimony of named witnesses, but also of "any other people who might" come into the case. As a matter of fact, the record does not show that the names of the witnesses whose depositions were actually taken were submitted in advance to the accused or his attorney. As a result, neither the accused nor his attorney could prepare possible impeachment matter. Practically, from the accused's standpoint, a substantial part of the case against him was made by nameless witnesses. A procedure of that kind is incompatible with a fair trial.

A third defect in the procedure consists of the denial by the staff judge advocate of both the informal request and the formal motion for appropriate relief. The power to pass on a motion before trial in a matter of this kind lies with either the law officer of the court-martial or the convening authority. Manual for Courts-Martial, United States, 1951, paragraph 117*g*. See also United States v Thornton, 8 USCMA 446, 24 CMR 256. That power is judicial in nature and cannot be delegated.

United States v Butts, 7 USCMA 472, 22 CMR 262. The record supports the conclusion that the convening authority either never heard of the formal motion or that he delegated his authority to act to the staff judge advocate. In either case, the procedure is invalid.

Under the circumstances, the law officer erred in admitting the depositions into evidence. Error in the admission of evidence, however, does ▪ not itself justify reversal of a conviction. The error must have some prejudicial effect upon a substantial right of the accused. United States v Aldridge, 4 USCMA 107, 15 CMR 107.

No real issue was presented as to the fact of the accused's unauthorized absence. Part of the defense case contained references to that absence. Hence, there is no "fair risk" that the inadmissible deposition testimony influenced the court-martial in its determination that the accused was absent without authority for the period alleged and proven. That finding can be affirmed without affecting any substantial right of the accused.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Army for resubmission to the board of review. In its discretion, the board of review may affirm findings of guilty of an unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886, and reassess the sentence on that basis, or it can order a rehearing on the original charge.

FERGUSON, Judge (concurring):

I subscribe to the views expressed in the principal opinion; however, I wish to add a single observation. A convening authority may "for good cause" forbid the taking of an oral deposition and provide instead that written interrogations be submitted. Article 49(a), Uniform Code of Military Justice, 10 USC § 849.

LATIMER, Judge (concurring in the result):

I concur in the result.

I do not join outright in the Court's opinion because I believe one of the main principles advanced ▪ by the Court is erroneous. ▪ I have particular reference to the construction of Article 49 of the Uniform Code of Military Justice, 10 USC § 849, and the view that certain provisions of the Manual are inconsistent therewith. I will first state my reasons for rejecting the interpretation of the Article and will then set out the principles underlying my concurrence.

The Court in construing Article 49 of the Code, supra, seems to rely on a rule of statutory construction that the mention of one thing implies the exclusion of another. Thus the conclusion is reached that because the Code conferred on a convening authority the power to designate counsel to represent the parties in the taking of depositions prior to referral of charges, Congress intended to deny him that authority after they were referred. If I am right in my conclusion as to the rule relied upon, then my associates have indeed chosen a weak rod to support their interpretation. At best, it is only an aid to construction, it applies only under certain conditions, is subject to many exceptions, and should be applied with caution. Sutherland, Statutory Construction, 3d ed, § 4917. By using that rule as a means of arriving at the real intent of the lawmakers, my associates reach the doubtful conclusion that Congress intended to deny a convening authority the power to appoint counsel to assist an accused in the taking of depositions unless he does so prior to the time charges have been referred. I just cannot be driven to accept a doctrine so opposed to the beneficent purposes of the Code.

In construing the statute some consideration must be given to the reasons for its enactment and the purposes it sought to accomplish. Certainly, Congress was interested in having an accused represented by adequate counsel whenever reasonably possible. At the same time, it sought to devise a practical system for the prosecution of offenders. Before charges are referred counsel has not been selected for either

461

the Government or the accused, and in order that depositions might be taken at that time, someone had to be clothed with the authority to make the appointment. Congress selected the convening authority for that purpose but from that it cannot be argued that he was thereafter barred from making further appointments. Article 27 of the Code, 10 USC § 827, states that for each general court-martial, he must appoint defense counsel. That appointment is after charges have been referred and the accused is given the right to request specific persons to aid in his defense. That seems to suggest to me that a convening authority can designate lawyers after charges are pending. Nowhere does the Code say the convening authority loses his authority to appoint counsel after the happening of that event nor does it say he can appoint only one or two officers who are on station. In my judgment, if he so elects, he may appoint a battery of officers to represent an accused and they can be located wherever evidence is to be collected. It is indeed a strange concept which holds that Congress denied to a convening authority the power to assure an accused adequate representation, regardless of where testimony might be taken. I am afraid my associates strike down a very beneficial provision of the Manual when they should be protecting it from abuse. Rather than hold the Manual is contrary to the Code, I find it is supplementary thereto and consistent therewith. It supports the purposes of the law and I concur with it wholeheartedly.

The only real ground for reversing this case is mentioned by my associates but I prefer to elaborate on █ their discussion. The vice in this case is not the Manual but the failure to comply with its mandates. The taking of depositions can be an orderly procedure and helpful to both parties if the basic requirements are complied with. Even though I believe a convening authority may be entitled to appoint counsel for an accused at the taking of the deposition, he must comply with the Manual requirements and make certain that counsel do likewise. Depositions can be either written or oral and anyone familiar with their

taking ought to know that when written interrogatories are used there is no necessity for appointing additional counsel, for both trial and defense counsel are available to prepare the questions and answers. However, when depositions are to be taken orally at some distance from the place of trial a different situation is presented. In that instance, the Government is faced with two alternatives, namely, transporting trial defense counsel to the location of the witness or having counsel stationed there assist trial defense counsel. The latter method was employed in this instance so I turn to the rules which deal with that situation. Article 49 of the Code, supra, provides that after charges have been signed, either party may take an oral deposition unless the authority convening the court-martial for the trial of such charges for good cause forbids that form of obtaining evidence. Therefore, before a deposition can be taken legally, the matter must be submitted to the convening authority, and the record should disclose that he has ruled. It is doubtful that he can form an intelligent opinion of the best method to be pursued unless he is presented with certain information which should be required in the taking of all oral depositions, that is, the name and military or nonmilitary status of the witness whose deposition is contemplated and a statement of his expected testimony. If the matter is pro forma, routine or relatively unimportant, one method might be used while if the testimony goes to the very heart of the case, the other must be provided. Some such concept must be the base for the approach taken by the Manual. With respect to the taking of oral depositions after charges are filed, the subject which concerns us, paragraph 117g, Manual for Courts-Martial, United States, 1951, provides:

"If, after charges are referred for trial, depositions are to be taken on oral examination rather than on written interrogatories, each party concerned will indicate in a separate letter or memorandum the reasons for the deposition and the points desired to be covered in the oral examination of the witness. Subse-

462

quent to submission to and inspection by opposing counsel, the papers will be submitted to the convening authority or to the law officer (president of a special court-martial) depending upon whether the court is in session. If submitted to the law officer (president of a special court-martial), he will examine the papers and approve the taking of the deposition or refer the papers to the convening authority if it is deemed the deposition should be forbidden for good cause."

It is to be noted that when there is to be oral examination, each party will indicate through counsel then representing the parties, in a separate letter or memorandum, the reason for the deposition and the points desired to be covered in the oral examination of the witness. When those have been prepared they will be exchanged by opposing counsel so that they will each be informed of the general nature and extent of the testimony, and its relevance and materiality to the issues being tried. That will furnish them with the necessity for and the limitations of cross-examination. After that has been done, the convening authority or the law officer or president of a special court-martial, if the court is in session, can make an intelligent determination whether the taking of the deposition should be permitted and if so whether additional counsel should be appointed. If the decision is to appoint associate counsel to act for the accused and the Government in the taking of depositions, trial defense counsel can work satisfactorily with his associate counsel as to the areas of examination and cross-examination. It is done every day in civilian cases and I know of no good reason why it should not be acceptable in the military system. On the other side of the ledger, if those requirements are not complied with, associate counsel far removed from the scene of the trial has little appreciation of the theories of the prosecution and defense and he is necessarily left in the dark as to his areas of responsibility.

This case is an example of why it is necessary to comply strictly with the law on depositions. Here the defending counsel representing accused at the trial was told that the testimony of six possible prosecution witnesses and any other people who might throw light on this case would be taken. He was far removed from their location, and he was not given their names, addresses or expected testimony. They were not available for his interrogation and neither he nor the accused could offer any helpful assistance to the newly appointed assistant. I doubt very much that the assistant was furnished with the information in time to interview them prior to the hearing. While I conclude it is not necessary for the trial defense lawyer to be transported to all the places where evidence is to be obtained, it is necessary that he, his client and his associate have some common meeting ground from which to start, so that the lawyer who is to try the case will be furnished with the best evidentiary tools available. In addition, the art of cross-examination is reduced to a sham if the associate defense lawyer is left as a stranger to the trial. Much of the criticism directed at obtaining evidence by deposition would be silenced if the matter was handled in the manner contemplated by the Code and the Manual, but unfortunately in this instance it was more honored in the breach than in the observance.

One other matter bears comment. There is such a thing in a criminal case as credibility of witnesses. That involves matters like inconsistent stories, convictions of felonies, bias, interest, motives to falsify, and so forth. I am at some loss to ascertain how any exploratory work in those areas can be performed if the witnesses' identity is unknown to trial defense counsel. He ought to be furnished some identifying information, and I am certain that the consideration shown to the defending lawyer in this instance was woefully inadequate. He was quite right when he vigorously protested against the cavalier treatment he received.

In United States v Valli, 7 USCMA 60, 64, 21 CMR 186, we stated:

"The taking of a deposition by the prosecution is not permitted in most American civilian jurisdictions, but, because of the necessities of the serv-

ice, military law has permitted their use in military courts. We have upheld the right of Congress to authorize their use, but we have appreciated that for the most part they are tools for the prosecution which cut deeply into the privileges of an accused, and we have, therefore, demanded strict compliance with the procedural requirements before permitting their use."

Here the Government again failed to comply strictly with the requirements of the Manual, and the depositions should not have been admitted. They contained evidence involving the critical area of confessions and admissions by the accused and their impact on the court-martial was great. Prejudice is therefore apparent.

Accordingly, I agree that this case must be remanded as directed in the principal opinion.