UNITED STATES, Appellee

v

RICHARD J. SLAMSKI, Airman First Class,
U. S. Air Force, Appellant

11 USCMA 74, 28 CMR 298

No. 13,215

Decided December 18, 1959

*Lieutenant Colonel Philip J. Williamson* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel James L. Kilgore.*

*Captain Richard T. Yery* argued the cause for Appellee, United States. With him on the brief was *Colonel John F. Hannigan.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

An Air Force general court-martial in Japan convicted the accused of stealing $161 from another airman and im-

posed a sentence which includes a dishonorable discharge. The conviction was affirmed on review and the accused appealed to this Court contending he was prejudiced by admission in evidence of a pretrial statement he made to the staff judge advocate.

Briefly, the factual background of the accused's claim of error is as follows. Through the efforts of an alert Air Policeman and a bank teller the accused was apprehended for the theft of a wallet containing $161 which belonged to Airman Alonge. The accused was informed of his rights under Article 31 of the Uniform Code of Military Justice, 10 USC § 831, and brought to the Base Air Police office. At the office he was searched and among his effects was found a $50 United States currency bill which was of the same kind and denomination as one of the bills in Alonge's wallet. The accused was "thoroughly familiarized" with his rights under Article 31 and was informed of the nature of the investigation. The accused said he received United States currency in the mail that morning as a birthday gift from his wife but there was nothing in the letters that referred to the money. Parenthetically, we note that other evidence was introduced to show the accused attempted to convert the $50 bill into military payment certificates at the Base banking facilities between 10:00 and 10:30 in the morning. The letters in the accused's possession were not picked up by the mail clerk until after 11:00 a.m. and were left on the clerk's desk. Between noon and 1:00 p.m. the accused came into the office and took the letters from the mail clerk's desk.

Sometime in the course of his interrogation the accused asked to see a legal officer and a Catholic Chaplain. The investigator called Major Eades, the staff judge advocate, at his quarters and informed him of the accused's request. Major Eades went directly to the Air Police office and was introduced to the accused. He was dressed in civilian clothes. The accused asked to see the Major's identification card and it was shown to him. However, as testified to by the accused, he was still suspicious. As a result, while he asked the

Major a number of questions he "didn't volunteer any information that evening." According to Major Eades he explained fully to the accused his position as staff judge advocate and that he could not represent the accused as an attorney. The accused "seemed merely interested in how long the air police could hold him." The Major advised him of several circumstances that bore upon the matter. He asked the accused if he had any further questions and "explained . . . that . . . [he] could give him a full explanation of all of his legal rights, but . . . could not advise him as his attorney." The accused said he had no more questions, but as Major Eades was leaving the building he was recalled. He then discussed with the accused whether the accused should make a statement. He impressed upon the accused that it was "his decision" to make. The accused then indicated he wanted to talk to the Chaplain before he made a statement. Major Eades offered to call the Chaplain but the accused said he would talk to him the next morning. "[O]n that note," Major Eades left.

About 9:00 the next morning the accused appeared with Air Policeman Spina at Major Eades' office. He looked at the nameplate on the Major's desk. The Major said: "Now, do you believe who I said I was last night?" The accused said "Yes, sir. Sir, I took $70, but I didn't take all of the money."

At trial, defense counsel objected to the admission in evidence of the accused's statement on the ground that "an attorney-client privilege was entered into" between the accused and Major Eades, and the statement was protected from disclosure. The accused took the stand for the "limited purpose" of establishing the attorney-client relationship, and testified substantially as indicated above. Two questions and answers merit quotation as indicative of the essence of his testimony:

"Q [Defense Counsel]. You felt that from the time Major Eades walked into that room and to this day that anything you said was confidential?

"A. Yes, sir; that was my understanding.

. . . . .

"Q [Trial Counsel]. You comprehended that if you made any statements to Major Eades or to any other investigator, you would possibly have that evidence used against you; is that correct?

"A. No, sir; not to Major Eades. I was under the impression that Major Eades was going to be my defense counsel."

Besides hearing testimony on the issue, the law officer heard extensive argument from counsel. He overruled the objection and allowed the statement into evidence.

In his post-trial review, the staff judge advocate to the convening authority, Lieutenant Colonel E. Lewis reviewed the issue at length. His discussion is described as "excellent" by the board of review and is, indeed, deserving of commendation. He concluded there was "sufficient foundation . . . [for the determination that accused's statement] was not [made] under the cloak of a privileged communication." The board of review adopted his "rationale and conclusions" and we can profitably do so ourselves. However, some aspects of the accused's claim of error require additional comment.

On this appeal, the principal complaint is not aimed at the attorney-client privilege. As to that, there is ample evidence in the record of trial, to support the law officer's ruling. One of the fundamental requirements for creation of the privilege is that the lawyer be accepted as such by the client. United States v Brady, 8 USCMA 456, 24 CMR 266; United States v Miller, 7 USCMA 23, 21 CMR 149. The accused admitted he did not believe Major Eades was a legal officer when he saw him at the Air Police office, and consequently, he "didn't volunteer any information. Manifestly there was no acceptance of Major Eades as a lawyer by the accused at that time. So far as the incident in the Major's office the next morning is concerned, we may assume, although the accused never so maintained at the trial, that as soon as he read Major Eades' nameplate he accepted him as his attorney. However, Major Eades testified he had expressly told the accused he could not act as his lawyer. The accused did not deny the statement in his own testimony; that circumstance provides the basis for a reasonable inference that the Major's statement was true. United States v Humble, 11 USCMA 38, 28 CMR 262. Thus, the law officer was free to choose between the accused's broad and admittedly contradictory testimony that he regarded Major Eades as his lawyer "from the moment" he met him in the air police office, and the evidence to the effect that the accused was expressly told, and therefore knew, that Major Eades could not act as his attorney.

Here, the allegation of error veers away from the attorney-client privilege to a contention that Major Eades failed to advise the accused in their conversation at the Air Police office as to the accused's right to counsel. The new argument is basically inconsistent with the old, in that it presupposes no attorney-client relationship was created at that time. In other words, if there was an attorney-client relationship, obviously the accused was, in fact, accorded the right to counsel and there was no need to talk about the right in the abstract. Be that as it may, there is no error here.

The Government argues that the record shows complete awareness by the accused of his right to counsel during interrogation by the Air Police. Indeed, it may be asked, "Why else did the accused request a legal officer and, after consultation with him, make no further statements?" Perhaps Major Eades should have, but did not expressly tell the accused he could retain civilian counsel at his own expense or obtain, if possible, the voluntary services of a military lawyer; and that, in either case, his counsel might be entitled to be present with him during interrogation by law enforcement agents. See United States v Gunnels, 8 USCMA 130, 23 CMR 354; United States v Rose, 8 USCMA 441, 24 CMR 251. However,

the accused made no incriminating statements to the agents as a result of the omission. Consequently, it cannot be said he was harmed by the purported oversight. United States v Melville, 8 USCMA 597, 25 CMR 101; see also United States v Mickel, 9 USCMA 324, 26 CMR 104. As for the statement to Major Eades, the accused based that wholly on the claim that he believed the Major was his lawyer. That claim was decided against him, with ample evidence to support the determination.

The decision of the board of review is affirmed.

Judge LATIMER concurs.

FERGUSON, Judge (dissenting):

I dissent.

Tried by general court-martial, the accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for one year. With some reduction in sentence, intermediate appellate authorities affirmed, and we granted review on the issue whether "the staff judge advocate (Major Eades) erred in not advising the accused regarding his right to counsel when the staff judge advocate appeared at the Air Police Operation Section and interviewed the accused pursuant to his request to see a legal officer."

The accused, stationed at an air base in Japan, was suspected of larceny of $161.00 from a fellow airman. He was taken into custody by Air Police investigators and subjected to interrogation. He indicated to the investigator questioning him that he desired to consult a "legal officer." The interview was temporarily terminated and Major Eades, the local staff judge advocate, was summoned to advise the accused. Major Eades appeared; informed the accused he could not act as his attorney as he was the legal adviser to the special court-martial convening authority; advised him of his rights under Code, supra, Article 31, 10 USC § 831; and discussed with him the elements of the offense of larceny as well as the prog-

ress in the investigation up to that point. He refused to advise the accused whether he should make a statement, stating to the latter he must make that decision himself. He said nothing to the accused of his right to be represented by counsel. It should also be noted that some controversy arose between Major Eades and the accused concerning whether the former was in fact the staff judge advocate. On the following morning, accused was taken to Eades' office. Eades pointed to an informative sign on his desk and asked accused if he now believed he was the staff judge advocate. The accused replied in the affirmative and blurted out a statement that he had only taken $70.00 from the victim. Thereafter, and without advising him of his rights under Code, supra, Article 31, Eades questioned accused closely concerning the details of the offense. Upon completion of the interrogation, he assigned a Lieutenant Ferguson as defense counsel.

Upon the presentation of the statement made by accused to Major Eades at the trial, defense counsel objected on the basis that it was a confidential communication made by a client to his attorney. The law officer overruled the objection, although he later submitted the issue to the members of the court-martial with appropriate instructions. As there is substantial evidence in the record to support his conclusion in this respect, it must stand. However, it should be noted that we granted on the issue of Major Eades' failure to advise the accused of his right to counsel rather than whether he became the accused's lawyer, and it is with the disposition of this question by the author of the principal opinion that I disagree.

In United States v Gunnels, 8 USCMA 130, 23 CMR 354, a majority of this Court decided an accused was entitled to the advice of counsel during inquiries conducted by criminal investigators. We pointed out it was the duty of the staff judge advocate to advise a suspect who consults with him that he is entitled to be so represented by counsel. As stated by the Chief

Judge in the principal opinion in that case, at pages 134 and 135:

" . . . A suspect has no right to the appointment of military counsel, but he most assuredly has a right to consult with a lawyer of his own choice *or with the Staff Judge Advocate. . . .* We also condemn, therefore, the Staff Judge Advocate's order to his assistants to refrain from advising the accused if he sought their counsel.

. . . . .

"We have no fear that the Staff Judge Advocate will be inundated by hordes of suspected accused seeking him out for advice as to their rights during the investigative proceedings by law enforcement officers; nor do we fear that by giving the accused advice as to his rights the Staff Judge Advocate will compromise his position as legal adviser to the convening authority, at least no more so than when he is asked to advise the investigating officer. United States v DeAngelis, supra [3 USCMA 298, 12 CMR 54]. *It seems to us to be a relatively simple matter to advise an uninformed and unknowing accused that, while he has no right to appointed military counsel, he does have a right to obtain legal advice and a right to have his counsel present with him during an interrogation by a law enforcement agent.*" [Emphasis supplied.]

Our decision in United States v Gunnels, supra, was published on July 19, 1957. Accused conferred with Major Eades on October 20, 1958. It is obvious that sufficient time had elapsed for this opinion to come to the attention of this staff judge advocate, and we must, of course, assume he was familiar with our holding therein. Certainly, it cannot be argued that he complied with our decision in *Gunnels,* supra, for he contented himself with a discussion of the offense, the progress in the investigation, and advice to the accused of his rights under Code, supra, Article 31. That was the extent of his conversation. He made no mention of the latter's entitlement to consult with counsel and the right to have his counsel present

with him during an interrogation by a law enforcement agent, although he states he specifically informed accused that he could not represent him, he did not mention anything concerning the availability of the other three junior officers assigned to his office, one of whom was designated to represent the accused *immediately after the confession was made on the following morning.* These circumstances require me to conclude that the failure properly to advise the accused of his counsel rights was error. United States v Gunnels, supra; United States v Rose, 8 USCMA 441, 24 CMR 251.

My brothers find, however, that accused was not prejudiced by the misadvice. I am unable to perceive the reasoning which leads them to this result. The accused had made no admissions to investigators until Major Eades appeared on the scene. He continued to remain silent until the following morning when, confronted with the fact that Eades was indeed the staff judge advocate, he blurted out a confession. True, the statement was not made to the agent who initially interrogated him, but is this a material distinction? The vice involved in the denial of the right to consult with counsel is that the accused is denied the opportunity to receive sound advice concerning the legal consequences of his conduct. Had he received proper information concerning his entitlement to representation and acted on it, is it likely that he would have spontaneously admitted his guilt to Major Eades? Of course, it is possible he might have done so, but appellate courts deal in probabilities, and I think it only fair to conclude that he would have chosen to remain silent had he been properly informed. Thus, the misadvice can properly be denominated the foundation for his subsequent declaration to Major Eades. As this incriminating statement constituted the heart of the Government's case, prejudice is apparent.

Although the principal opinion does not denominate it as such, I also detect a belief on the part of the majority that the doctrine of waiver is applicable here. With respect to such a contention, I can only point out that we are

dealing with an accused's right to consult with an attorney at a time when he is suspected of a serious criminal offense. This is a basic constitutional right. Powell v Alabama, 287 US 45, 53 S Ct 55, 77 L ed 158; Re Groban, 352 US 330, 77 S Ct 510, 1 L ed 2d 376. Its denial violates the requirements of due process. United States v Gunnels, supra. Moreover, we are not dealing with a mature legal system in which the accused's representatives possess the sophistication of experienced members of the unfettered civilian criminal bar. We must recognize the realities of the military legal situation and cut through the failure of counsel to argue obviously meritorious contentions in order to prevent denial to an accused of the fundamental protections afforded him by our charter of government. Thus, I would not invoke the doctrine of waiver, and I believe that my brothers err if they utilize it as a means of overlooking the important question involved. Parenthetically, I also note that Major Gunnels did not contend at any level below this Court that he was not permitted to consult with counsel. See United States v Gunnels, supra, dissenting opinion of Judge Latimer, at page 135.

I would reverse the decision of the board of review and authorize a rehearing.