**UNITED STATES, Appellee,**

v.

**Private (E–2) Michael A. ROSS, SSN 261–29–3930, United States Army, Appellant.**

**SPCM 12306.**

U. S. Army Court of Military Review.

14 July 1977.

Colonel Robert B. Clarke, JAGC, Lieutenant Colonel John R. Thornock, JAGC, Major Benjamin A. Sims, JAGC, and Captain Ronald M. Riggs, JAGC, were on the pleadings for appellant.

Lieutenant Colonel John T. Sherwood, Jr., JAGC, Captain Gary F. Thorne, JAGC, and Captain Dana C. McCue, JAGC, were on the pleadings for appellee.

Before COOK, Senior Judge, and DRIBBEN and DeFORD, JJ.

## OPINION OF THE COURT

DeFORD, Judge:

At a trial by special court-martial, the appellant was convicted, contrary to his pleas, of offenses of disrespect to a commissioned officer, willful disobedience of an order given by a commissioned officer, willful disobedience of two orders given by noncommissioned officers and resisting apprehension in violation of Articles 89, 90, 91 and 95, Uniform Code of Military Justice (UCMJ) (10 U.S.C. §§ 889, 890, 891, and 895). He was sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $240.00 per month for six months, and reduction to the grade of Private E–1. The convening authority approved the sentence as adjudged.

The appellant through counsel, has directed our attention to a single assignment of error concerning the post-trial processing of the appellant's case.

Counsel allege that the mandate of *United States v. Goode*,[1] was violated in that a substitute defense counsel was appointed to represent the appellant and that the substituted counsel did not act with the consent of the appellant. The events that subsequently occurred are necessarily intertwined in the 90-day *Dunlap* rule.[2] Accordingly, those days are shown in parentheses following the description of the events which occurred.

1. 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

2. *Dunlap v. Convening Authority*, 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

The operative facts with which we are concerned are as follows: The appellant's trial was conducted on 25 and 26 May 1976. Nine days following the trial, the appellant was transferred from Korea to the United States Disciplinary Barracks, Fort Leavenworth, Kansas. The record of trial was authenticated by the trial judge on 23 June 1976 (28) and served upon the trial defense counsel on the same date. Following the trial, the trial defense counsel formally advised his client of his appellate rights and on 23 June 1976 (28) executed a document in which he set forth a list of what he believed were errors committed during the trial. This document undoubtedly was intended to aid the subsequently appointed appellate defense counsel in the appeal of the appellant's case as well as provide the trial defense counsel a basis for a response to the post-trial review. On 9 August 1976 (75), Captain Latchaw, the trial defense counsel, was stricken with what was originally diagnosed as a heart attack and immediately hospitalized. He remained in the hospital in Korea until 31 August 1976 (98) when he was medically evacuated to Tripler Army Hospital in Hawaii. At some time during the period of 9 August (75) through 18 August (84), Captain Latchaw was visited by the command staff judge advocate who then determined that the trial defense counsel was mentally and physically incapable of providing any further legal services to the appellant. On 18 August (84) the command staff judge advocate determined that a substitute counsel would be required and he designated Captain Gibbs, the command's senior defense counsel, to replace Captain Latchaw as defense counsel in the appellant's case. The post-trial review was prepared by that date and served upon Captain Gibbs. That officer read the record of trial and assigned the errors enumerated by Captain Latchaw in the document executed on 23 June 1976. The convening authority took his action affirming the appellant's conviction on 24 August 1976 (90).

In *Dunlap, supra,* it was held that beginning 30 days after 21 June 1974, a presumption of a denial of speedy disposition will arise when the accused is continuously under restraint after trial and the convening authority does not promulgate his formal and final action within 90 days of the date of such restraint after completion of the trial. This presumption places a heavy burden on the Government to show diligence, and in the absence of such a showing, the charges should be dismissed.

Later, in *United States v. Goode, supra,* it was mandated that on or after 15 May 1975 a copy of the written review required by Article 61 or 65(b), UCMJ, 10 U.S.C. §§ 861 or 865(b), be served on counsel for the accused with an opportunity to correct or challenge any matter he deems erroneous, inadequate or misleading, or on which he otherwise wishes to comment. Proof of such service, together with any correction, challenge, or comment which counsel may make shall be made a part of the record of the proceedings. Failure of counsel for the accused to take advantage of this opportunity within 5 days of said service upon him will normally be deemed a waiver of any error in the review.

This Court has had two occasions [3] in which we were required to deal with the issue of substituted counsel who participated in the review mandated by *Goode, supra,* but, after appointment as substituted defense counsel, had no contact with their respective clients.

In both cases we held that the appointment of substituted counsel without either actual or implied acceptance of their services by the accused was a fatal infirmity in the proceedings.

Those cases were based upon *United States v. Brady* [4] in which it was stated:

". . . [A]n attorney-client relationship is not created by the mere designation of a representative for the accused

---

3. *See United States v. Economu,* 2 M.J. 531 (A.C.M.R.1976); *United States v. Claussell* (A. C.M.R. 27 October 1976).

4. *United States v. Brady,* 8 U.S.C.M.A. 456, 460, 24 C.M.R. 266, 270 (1957).

by a court-martial authority. . . . There must be an acceptance of the appointment by the accused. Here, the uncontradicted evidence shows that the designated counsel never consulted or communicated with the accused. . . . The evidence shows that no attorney-client relationship was established between the accused and Captain Falkenstrom."

The validity of the rule cited in *Brady, supra,* corresponds to the general practice in the American legal system. However, this rule does not take into consideration exigencies of the worldwide commitment of US military forces and certain conditions which are created by reason thereof.

Soldiers who are convicted by courts-martial and sentenced to confinement do not, as a general rule, remain confined to post, camp, or area confinement facilities pending the post-trial processing of their cases.[5] They are, as circumstances require, immediately moved to either the United States Army Disciplinary Barracks or the United States Army Retraining Brigade. The purpose for this immediate transfer is the recognition that the convicted soldiers cannot be effectively rehabilitated and returned to society as useful citizens or as soldiers to the Army in those environs. However, when, as here, a soldier is tried at one of the US forces' far-flung outposts such as Korea, he is, by necessity, separated from his counsel and the post-trial activity. On balance, I believe such a procedure is in the best interests of the convicted soldiers.

Turning to the factual circumstances before us, the staff judge advocate was faced with replacing the trial defense counsel who was no longer able to function. He waited nine days before making the decision that Captain Latchaw was no longer able to effectively represent the appellant. It is commendable that he designated the senior defense counsel to represent the appellant and, in view of the circumstances, I find the staff judge advocate's actions entirely reasonable.

Upon Captain Gibbs' appointment, he took the actions required to protect the appellant's best interests. He did not attempt to telephone the appellant at the Disciplinary Barracks as he believed such an effort would be futile.[6]

Captain Gibbs had seven days to complete his *Goode* review. It did not provide adequate time for correspondence with the appellant by mail.

Accordingly, I believe the military exigencies such as are set forth in this case precluded the substituted military defense counsel from contacting the appellant within the allotted time frame mandated by *Dunlap, supra.* Such action does not constitute prejudicial error. However, our decision in this case should be interpreted as a limited exception to the rule enunciated in *Brady, supra; Economu, supra* ; and *Claussell, supra.*[7]

With regard to Judge Cook's dissent, the statements attributed to the appellant in paragraph 6c of the post-trial review do not indicate to me that the appellant desired to remove his counsel nor do I believe he is entitled to a different appointed counsel under these circumstances. *See* my dissent in *United States v. Franklin,* 3 M.J. 785 (A.C.M.R. 15 June 1977).

The findings of guilty and the sentence are affirmed.

---

**5.** *See* paragraph 4.2, AR 190–47.

**6.** Our experience indicates that telephone communications between the Continental United States and the Republic of Korea for the average person without a significant military priority status would not be effective. Even if the appellant could have been reached by telephone, a conversation probably would not have been completed as that type of call would have been preempted by a caller with a higher priority over the limited telecommunication lines.

**7.** *Brady, Economu,* and *Claussell,* all *supra,* are all easily distinguishable from the case at bar. In *Brady,* the counsel was located in Germany and was accessible either by direct contact or telephone. In *Economu* and *Claussell,* the factual circumstances arose at Fort Bragg, North Carolina, and telephone communication with the appellants in those cases at the United State's Disciplinary Barracks would have only required the effort of making the required telephone call.

DRIBBEN, Judge, concurring in result:

Appellant stated in the post-trial interview that he was not satisfied with his defense counsel. The staff judge advocate's responsibility in response thereto is set forth in *United States v. Reynolds,* 19 C.M.R. 850, 853 (A.F.B.R. 1955) as follows:

[I]n criminal cases, and particularly in our court-martial system, any attack upon the professional competency of a defense counsel in a particular case is a matter which cannot, and should not, be lightly dismissed. Particularly is this so where the case is pending review and such remarks become of record for the consideration of all persons charged with the post-trial judicial proceedings. We believe that no one will deny that when the substance of accused's remarks in question came to the attention of the legal advisor to the convening authority, it was incumbent upon that officer to make some inquiry into the matter and to satisfy himself as to its merits before making a recommendation to his convening authority on the legal sufficiency of the case. In fact, a Staff Judge Advocate coming into information of this character who did nothing about it could well be considered derelict in his duties—a point conceded by both government and defense appellate counsel." (Underscoring supplied).

Apparently, the staff judge advocate found no deficiency in the representation of appellant by his trial defense counsel be-

cause he advised the convening authority in the post-trial review that "there were no errors which substantially prejudiced the accused's rights." * Had the staff judge advocate determined that appellant wanted to renounce his relationship with his defense counsel, at most appellant could have expected a new defense counsel to perform post-trial duties required by *United States v. Goode,* 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), and conceived by *United States v. Palenius,* 25 U.S.C.M.A. 222, 54 C.M.R. 549, 2 M.J. 86 (1977). In fact, appellant received a new defense counsel, who took appropriate action to protect appellant's post-trial interests.

I believe that *United States v. Iverson,* 2 M.J. 489 (A.C.M.R. 31 December 1975) is applicable to the case at bar and, based thereupon, I reach the same result as Judge DeFord.

COOK, Senior Judge, dissenting:

During the course of the post-trial interview [1] appellant stated that he was not satisfied with his defense counsel. It is my considered belief that such a remark is a disavowal by the client of the attorney-client relationship which effectively terminates that relationship.[2] Furthermore, I believe that in such a situation it is incumbent upon the staff judge advocate to take such steps as are necessary to ascertain the client's desires concerning legal representation during the post-trial processing of his case.[3]

---

* The record of trial gives no basis for any finding to the contrary.

1. The record is ambiguous as to just when this interview took place. Appellant was tried in Korea on 26 May 1976. In a post-trial affidavit the staff judge advocate asserts that appellant was shipped to CONUS on 4 June 1976. On 1 July 1976 a copy of the authenticated record of trial was sent by certified mail to appellant addressed to the Disciplinary Barracks at Fort Leavenworth, Kansas. The post-trial review, however, states that the interview in question occurred on 17 August 1976. Unless it occurred at Fort Leavenworth, Kansas (which seems unlikely as the review is dated 18 August 1976) either the appellant was still in Korea or the date in the review of 17 August is in error. I believe the latter assumption is cor-

rect. It follows, therefore, that this interview occurred on or prior to 4 June 1976.

2. ". . . because of the peculiar nature of the relation of attorney and client, the law goes even further and permits the termination thereof in a manner not recognized with respect to other contracts. . . . The client has the absolute right to discharge the attorney and terminate the relationship at any time even without cause, no matter how arbitrary his action may seem . . . ." 7 C.J.S. Attorney and Client § 109 (1937).

3. To do so does not in any way indicate that the staff judge advocate concurs in the client's disparagement of his trial defense counsel. Nor should our opinion be so construed. The

I am persuaded that appellant's renunciation of his trial defense counsel occurred on or before 4 June 1976. Under the *Dunlap*[4] 90-day rule, the convening authority's action need not have been taken prior to 24 August. This provided the staff judge advocate with ample time, irrespective of where the appellant was physically located, to ascertain his desires concerning counsel. As he did not do so, and substituted instead a counsel unknown to and unaccepted by the appellant,[5] I would require a new review and action.[6]

staff judge advocate's only objective, as is ours, should be to insure that the client is served by an attorney in whom he has confidence and trust and not one whose professional ability he had impugned. Entitlement to further representation is mandated by the VI Amendment to the United States Constitution; Article 38, Uniform Code of Military Justice; *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); and *United States v. Palenius,* 25 U.S.C.M.A. 222, 54 C.M.R. 549, 2 M.J. 86 (1977), which decision, in my opinion, obviates the reservations expressed in this particular by Justice Rehn-

quist in *Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976).

4. *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974).

5. *United States v. Slamski,* 11 U.S.C.M.A. 74, 28 C.M.R. 298 (1959); *United States v. Brady,* 8 U.S.C.M.A. 456, 24 C.M.R. 266 (1957); *United States v. Miller,* 7 U.S.C.M.A. 23, 21 C.M.R. 149 (1956).

6. *United States v. Franklin,* 3 M.J. 785 (A.C. M.R. 15 June 1977).