UNITED STATES, Appellee,

v.

Donald A. BINGHAM, Private, U. S. Marine Corps, Appellant.

No. 31,550.

NCM 75–1865.

U. S. Court of Military Appeals.

May 23, 1977.

*Lieutenant Commander Carl H. Horst,* JAGC, USN, was on the pleadings for Appellant, Accused.

*Lieutenant Colonel P. N. Kress,* USMC, *Lieutenant Commander Harvey E. Little,* JAGC, USN, and *Lieutenant Patrick A. Fayle,* JAGC, USN, were on the pleadings for Appellee, United States.

### Opinion of the Court

PERRY, Judge:

█ The appellant was convicted by a special court-martial on March 14, 1975, for the possession and sale of lysergic acid diethylamide in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. He was sentenced to a bad-conduct discharge, confinement at hard labor for 4 months, and forfeitures of $100 pay per month for 4 months. The special court-martial convening authority approved the findings and sentence, but he suspended the execution of the bad-conduct discharge for a period of 12 months.[1] The findings and sentence, as partially suspended, were approved by the general court-martial convening authority on July 1. However, on August 21, the general court-martial convening authority vacated the suspension of the punitive discharge. The appellant now challenges the procedural validity of the suspension action.[2] We conclude that the process followed was, in various respects, either statutorily or constitutionally infirm.

### I

The facts leading to the revocation proceedings of complaint are not a matter of disagreement between the parties. On July 16, 1975, charges were preferred against the appellant alleging two offenses of willfully disobeying a superior noncommissioned officer and one offense of possessing marihuana. The appellant was informed of these charges on July 17, and on the same day the special court-martial convening authority appointed an officer to conduct a vacation hearing, purportedly pursuant to Article 72, UCMJ, 10 U.S.C. § 872. He also appointed a defense counsel certified in accordance with Article 27(b) of the Code. The hearing was conducted on August 7, in conformity with the procedures established by Article 72, UCMJ, and paragraphs 97b and 34 of the Manual for Courts-Martial, United States, 1969 (Rev.).[3]

The record of the vacation proceeding reflects that the appellant was advised of the alleged violation of his probation.[4] He was further advised of the name of the person alleging the violation and of the names of adverse witnesses; that a hearing regarding the alleged violation was about to be held; that he had a right to be represented by civilian counsel, selected military or appointed military counsel; of the rights to cross-examine all available adverse witnesses and to have witnesses examined; of the right to present matters in his own behalf; and that he had a right either to make a statement or to remain

---

1. The appellant pleaded guilty. The suspension of the bad-conduct discharge was done pursuant to a pretrial agreement.

2. Government counsel contend that, as revocation of probation is not a criminal proceeding, this Court has no power to review the vacation of a suspended sentence. Whatever the characterization of such proceedings, they are integral parts of a court-martial sentence which, as such, are reviewable by this Court. *See United States v. Andreason,* 23 U.S.C.M.A. 25, 48 C. M.R. 399 (1974); *United States v. Lallande,* 22 U.S.C.M.A. 170, 46 C.M.R. 170 (1973); *United States v. Cecil,* 10 U.S.C.M.A. 371, 27 C.M.R. 445 (1959); *United States v. May,* 10 U.S.C.

M.A. 358, 27 C.M.R. 432 (1959). *See also McPhail v. United States,* 1 M.J. 457 (1976).

3. Although the appellant was charged with several offenses, the record of the vacation proceeding reflects that only the alleged possession of marihuana was the subject of inquiry thereat. Moreover, in a letter of transmittal, the hearing officer discussed only this offense and noted that the appellant admitted he had possessed the contraband but claimed that he had been unaware of the nature of the substance.

4. Additionally, the appellant was advised of the alleged probation violation through the charge sheet.

silent and that any statement could be used against him. The appellant was represented by his appointed defense counsel. Two Government witnesses testified that a search of the appellant's person produced a plastic bag of suspected marihuana, and the defense stipulated that a subsequent analysis revealed the presence of marihuana. The defense presented a witness who testified that the appellant was not smoking prior to the search. The appellant testified that he had placed a plastic bag in his pocket because someone had remarked that the military police were coming, but he disclaimed ownership and knowledge of the bag's contents.

The hearing officer summarized the evidence in a letter of transmittal and recommended that the suspension of the discharge be vacated, and the special court-martial convening authority (the brigade commander) concurred in the recommendation. The case was forwarded to the regimental commander who, in turn, sent it to the general court-martial convening authority, recommending vacation of the suspension. The staff judge advocate concurred in this recommendation, and the general court-martial convening authority effectuated it by vacating the suspension.

## II

As stated above, the appellant before us contends that the military procedure for vacation of a suspended sentence does not comply with the requirements of constitutional due process expounded in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). At this point, a detailed comparison of the constitutional requirements discussed in these two landmark cases, against the process accorded military persons by Article 72, would be profitable.

In *Morrissey v. Brewer, supra*, the United States Supreme Court held that revocation of parole is not a criminal prosecution, and, therefore, that the application of the full array of rights found in a criminal prosecution is not required. However, the Court concluded that due process [5] does require a prompt hearing near the place of arrest or parole violation, if a parolee is deprived of his liberty, "to determine whether there is probable cause or reasonable ground" to believe the parolee has violated his parole. *Id.* at 485, 92 S.Ct. 2593. Additionally, the Court noted that this preliminary hearing must be conducted by someone other than the parole officer involved in the case. The nature of the hearing the Court contemplated includes the following:

(1) Notice to the parolee of the time, place, and purpose of the hearing, including the alleged parole violations;

(2) An opportunity to cross-examine and confront adverse informants, unless the hearing officer determines they would be subject to risk or harm;

(3) An opportunity for the parolee to present evidence in his own behalf;

(4) A summary or digest of the hearing; and

(5) A determination by the hearing officer whether there is probable cause to hold the parolee for the final decision of the parole board, with a statement of the reasons for the determination, including the evidence relied upon.

Referring to what is described as the "second stage of parole revocation," the Court determined that the parolee must be accorded a hearing prior to the *final* decision on whether to revoke his parole. It defined the procedural safeguards for this hearing as follows: [6]

They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in per-

---

**5.** The Supreme Court in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), was concerned with a State prosecution and, thus, applied the fourteenth amendment due process clause. The requirement of a hear-

ing in federal proceedings, such as the instant case, is imposed by the fifth amendment.

**6.** *Morrissey v. Brewer, supra* at 489, 92 S.Ct. at 2604.

son and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial.

Subsequently, in *Gagnon v. Scarpelli, supra,* the High Court clarified the requirements of *Morrissey* by elaborating on the duality of hearings involved in a revocation proceeding. It noted that conventional substitutes for live testimony could be used when appropriate. As to the right of counsel, the Court held such right was not synonymous with a right to counsel during a criminal proceeding, but was dependent upon the facts and circumstances of each case, as required, to preserve the fairness of the proceeding.

■ On the other hand, Article 72, UCMJ, provides for vacation of a suspended sentence imposed upon a serviceperson in the following manner: [7]

(a) Before the vacation of the suspension of a special court-martial sentence which as approved includes a bad-conduct discharge, or of any general court-martial sentence, the officer having special court-martial jurisdiction over the probationer shall hold a hearing on the alleged violation of probation. The probationer shall be represented at the hearing by counsel if he so desires.

(b) The record of the hearing and the recommendation of the officer having special court-martial jurisdiction shall be sent for action to the officer exercising general court-martial jurisdiction over the probationer. If he vacates the suspension, any unexecuted part of the sentence, except a dismissal, shall be executed, subject to applicable restrictions in section 871(c) of this title (article 71(c)). The vacation of the suspension of a dismissal is not effective until approved by the Secretary concerned.

(c) The suspension of any other sentence may be vacated by any authority competent to convene, for the command in which the accused is serving or assigned, a court of the kind that imposed the sentence.

While Article 72 does not define the nature of the hearing, paragraph 97c of the manual provides for a hearing similar to that prescribed for an Article 32 investigation in paragraph 34 of the Manual. Paragraph 97 b further refers to a form of record set out in appendix 16 of the Manual.

■ The procedure followed in the military pursuant to Article 72 and to the referenced Manual paragraphs differs from the standards set forth in *Gagnon v. Scarpelli, supra,* and in *Morrissey v. Brewer, supra,* in two major respects. First, as the appellant notes, *Gagnon* and *Morrissey* require both a preliminary hearing to determine whether there is probable cause to believe the probationer has violated the conditions of his probation, and a final hearing to determine whether the suspension should be revoked, whereas Article 72 prescribes only one hearing which serves as the basis for the action by the general court-martial convening authority. However, both *Gagnon* and *Morrissey* involved the continued detention of

---

7. Because the present case involves a special court-martial sentence which includes an approved bad-conduct discharge, we are not here presented with a situation where a suspended sentence is vacated without a hearing. However, to whatever extent such "other sentence" emanates from a proceeding fairly termed a criminal trial, *see Middendorf v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976), it would appear hearings would be required by *Morrissey* and by *Gagnon* in order to vacate a suspension of all or part of that sentence.

the individuals after their initial arrest for either return to the correctional facility for the parole revocation or the imposition of a sentence to confinement without any form of a hearing. Thus, in those cases, an initial determination was required to justify their continued detention. However, the Supreme Court observed in *Moody v. Daggett*, 429 U.S. 78, 86, 97 S.Ct. 274, 278 n. 7, 50 L.Ed.2d 236 (1976), "where petitioner has already been convicted of and incarcerated on a subsequent offense, there is no need for the preliminary hearing which *Morrissey* requires upon arrest for a parole violation" because the issuance of a parole violation warrant did not deprive the parolee of his liberty.[8] In the present case, the appellant was not confined as a result of his misconduct. Thus, while the practice in the military under Article 72 is deficient in not prescribing a preliminary probable cause hearing in cases where the probationer is confined on the basis of the alleged violation, the appellant's right in this respect was not abridged.

■ The second principal variation between military practice and that mandated by *Gagnon* and *Morrissey* has to do with what is required of the official who actually decides whether probation or parole ought to be revoked. The Court in *Morrissey* stated that one of the indicia of due process connected with the second hearing is that there must be a "written statement by the factfinders as to the evidence relied on and the reasons for revoking parole." *Morrissey v. Brewer, supra*, 408 U.S. at 489, 92 S.Ct. at 2604. That portion of the opinion in *Morrissey* rests upon the practice in civilian courts where the official or body which conducts the second hearing will be the same entity which makes the final decision on revocation. Under Article 72, however,

this is not the case; the hearing officer is the special court-martial convening authority, while the decision maker is the general court-martial convening authority[9] in all cases emanating from general courts-martial or from special courts-martial with approved sentences including a bad-conduct discharge.[10] Since the Supreme Court stated that it viewed its proper role as one, not of handing down a procedural code, but rather, of simply enunciating what the minimal due process guideposts were which must be found in any such code, we believe that it is constitutionally permissible for the second revocation hearing function to be separate from the final decision-making function. However, whether it is separate, as it is in the military, or coterminous, as the situation may well be in many of the States, we are confident that the Court, in *Morrissey*, did intend to require that the decision maker complete a written statement "as to the evidence relied on and the reasons for revoking parole." *Morrissey v. Brewer, supra* at 489, 92 S.Ct. at 2604. Among other purposes which it may serve, this statement is the document upon which an appeal therefrom might be based. As the general court-martial convening authority who made the revocation decision in the appellant's case executed no such report, the process followed herein is deficient.

■ We notice one additional problem with the hearing procedure followed in the appellant's case—this time, in an apparent departure from the dictates of the Uniform Code of Military Justice. Article 72(a) of the Code provides that "the officer having special court-martial jurisdiction over the probationer shall hold a hearing on the alleged violation of probation." The language is prescriptive and does not by its terms permit delegation of this responsibili-

**8.** In *United States v. Tucker*, 524 F.2d 77 (5th Cir. 1975), *cert. denied*, 424 U.S. 966, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976), the court noted the twofold problem and concluded that a preliminary hearing was not required when a probationer was incarcerated pursuant to a final conviction at the time of the attempted revocation. Similarly, the court in *United States v. Strada*, 503 F.2d 1081 (8th Cir. 1974), upheld a denial

of a preliminary hearing where a probationer was not arrested prior to the revocation of his probation.

**9.** Article 72(b), Uniform Code of Military Justice, 10 U.S.C. § 872(b).

**10.** Article 72(a), UCMJ, 10 U.S.C. § 872(a).

ty.[11] Moreover, the reason the statute cannot be interpreted more flexibly so as to allow a delegation is apparent in an examination of the role that such convening authority plays in the process. The Supreme Court, in *Gagnon* and in *Morrissey*, contemplated that this "revocation hearing" officer would provide an evaluation of any contested facts and a determination of whether the facts, as found, warranted revocation. Thus, factfinding and discretionary powers of a quasi-judicial nature are lodged in the revocation hearing officer, and, as such, we believe they must be exercised by the statutorily empowered official,[12] unless that person is otherwise constitutionally disqualified. Thus, the hearing function in the appellant's vacation proceeding was improperly conducted by someone other than the special court-martial convening authority.[13]

The decision of the United States Navy Court of Military Review is reversed as to the sentence. The record is remanded to the Court of Military Review which in its discretion may either approve a sentence which does not include a bad-conduct discharge or return the record to a competent authority to determine if a new vacation proceeding is practicable. See *United*

*States v. Glaze*, 22 U.S.C.M.A. 230, 46 C.M.R. 230 (1973).

Chief Judge FLETCHER concurs.

COOK, Judge (dissenting):

I cannot agree with the majority's conclusion that Article 72(a), Uniform Code of Military Justice, 10 U.S.C. § 827(a), precludes the special court-martial convening authority from delegating a hearing officer for proceedings for vacation of a suspended sentence. Commenting on the nature of the hearing required, the drafters of the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, paragraph 97*b*, at 135–36, noted:

This paragraph is a restatement of Article 72 and is new to all armed forces. The important feature of the procedure established by Article 72 is that a suspended sentence involving a bad conduct discharge adjudged by special court-martial and any sentence adjudged by general court-martial may not be vacated without a hearing conducted personally by the officer exercising special court-martial jurisdiction over the "probationer". Article 72*a* makes no provision for the delega-

11. Paragraph 97*b*, Manual for Courts-Martial, United States, 1969 (Rev.), contains identical language to that of Article 72(a) of the Code. Commenting on the nature of the hearing required by paragraph 97*b* and Article 72(a), the drafters of the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, noted this decretive language and observed that any suspension of a sentence imposed by a requisite tribunal therefore, "may not be vacated without a hearing conducted *personally* by the officer exercising special court-martial jurisdiction over the 'probationer'" [emphasis added]. However, in an attempt to circumvent the spirit of this statutory language, they noted that many such commanders simply will be too busy to conduct such hearings in their *entirety*. Therefore, the drafters endorsed what amounts to a bifurcated hearing at this level, with the initial stages being conducted by someone designated by the special court-martial convening authority. Only if, on the basis of that hearing, the special court-martial convening authority believes that vacation is warranted, will he then proceed to conduct what "may be [a] brief" hearing himself, at which the probationer "will be given an opportunity to consider the

report of the preliminary hearing, object thereto, and submit new matter." For the reasons discussed in this opinion, *infra*, we find this imaginative interpretation of Article 72(a) inappropriate.

12. *See United States v. Brady*, 8 U.S.C.M.A. 456, 460, 24 C.M.R. 260, 264 (1957); *United States v. Greenwalt*, 6 U.S.C.M.A. 569, 573, 20 C.M.R. 285, 289 (1955); *United States v. Bunting*, 4 U.S.C.M.A. 84, 87, 15 C.M.R. 84, 87 (1954).

13. We are not unsympathetic to the concerns expressed by the drafters of the Legal and Legislative Basis of the 1951 version of the Manual for Courts-Martial, that many commanders at the special court-martial convening authority level have other pressing command duties to perform. It would seem that, with the advent since that time of an independent judiciary at the trial level and of a transfusion of military magistrates into our system of justice, it ought to be reconsidered legislatively whether the special court-martial convening authority currently is the most desirable official to be conducting these revocation hearings.

tion of the power and duty to hold the hearing on the alleged violation of probation. It is obvious, however, that many commanders exercising special court-martial jurisdiction will not have sufficient time to conduct such hearings in their entirety. Thus, appendix 16, which contains a form of a report of such a hearing, indicates clearly that the initial stages of the hearing can be conducted by an officer appointed by the officer exercising special court-martial jurisdiction. This preliminary hearing will be conducted in the presence of the accused and the accused will be entitled to have counsel represent him, either counsel of his own choice if reasonably available or counsel furnished by the officer exercising special court-martial jurisdiction.

After the preliminary hearing has been conducted, if the officer exercising special court-martial jurisdiction deems that vacation of the suspended sentence is warranted, he will conduct a formal hearing in the presence of the accused and, if he desires, counsel. This formal hearing may be brief. The accused will be given an opportunity to consider the report of the preliminary hearing, object thereto, and submit new matter. If the officer exercising special court-martial jurisdiction, after holding such a hearing, deems vacation of the suspended sentence to be warranted, he will forward the report of the hearing, with a recommendation to that effect, to the officer exercising general court-martial jurisdiction over the command.

Indeed, appendix 16 to both the 1951 Manual and the Manual for Courts-Martial, United States, 1969 (Rev.), sets forth a procedure whereby a special court-martial convening authority may appoint a hearing officer. Thus, since its enactment, Article 72(a) has been interpreted to permit the special court-martial convening authority to delegate a hearing officer to conduct the initial portions of the hearing. The construction accorded a statute by the authorities charged with its implementation is entitled to great weight, especially when, as here, there is no legislative history to the contrary. *See United States v. Dean,* 7 U.S.C.M.A. 721, 23 C.M.R. 185 (1957).

The procedure adopted by the President for the hearing is not unique to the vacation of a suspended sentence under Article 72(a). Often a tribunal or authority vested with the power of decision will appoint a hearing officer to receive the evidence upon which it will base its decision. The Supreme Court has traditionally referred to Special Masters cases presented to it under its original jurisdiction. *United States v. Maine,* 420 U.S. 515, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975); *Mississippi v. Arkansas,* 415 U.S. 289, 94 S.Ct. 1046, 39 L.Ed.2d 333 (1974). Rule 55 of this Court's Rules of Practice and Procedure provides for appointment of a commissioner of the Court to conduct a hearing to receive such evidence as the parties may present to enable the court to rule on a petition for a new trial. Commonly, at the district court level, a judge may receive evidence on a matter before him for decision by means of a hearing before a magistrate. *See* Federal Magistrates Act, 28 U.S.C. §§ 631–39. In *Wingo v. Wedding,* 418 U.S. 461, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974), the Supreme Court concluded that a habeas corpus hearing could not be conducted by a magistrate. The ruling, however, was not based on any constitutional prohibition against such hearing, but on the Court's construction of 28 U.S.C. § 2243. Subsequently, the Federal Magistrates Act was amended to change the restriction perceived in *Wingo.* 28 U.S.C. § 636 (1976). Indeed, in a recent case, the U. S. Court of Appeals for the District of Columbia Circuit concluded the designation of a special master was appropriate for a suit involving the Freedom of Information Act, 5 U.S.C § 522 *et seq.,* because of the burdensome and time-consuming nature of the proceedings. *Irons v. Gottschalk,* 548 F.2d 992 (D.C.Cir.1976). As noted in the quoted portion of the Legal and Legislative Basis, *supra,* the appointment of a hearing officer to conduct a vacation hearing was deemed desirable for the same reason.

I regard the result reached by the majority as wrong for another reason. Under Article 72(a), the special court-martial convening authority does not make the ultimate decision to vacate the suspension. Rather, his function is limited to a recommendation thereon. The majority concede there is no constitutional prohibition against separating the final decision-making power of the general court-martial convening authority from the special court-martial convening authority's function. If there is no constitutional prohibition against separating these responsibilities from the decision-making function, it logically follows there is no prohibition against a bifurcated hearing.

Turning to the second ground upon which the majority rely, I cannot agree that reversal is required because the convening authority did not provide a written report "as to the evidence relied on and the reasons for revoking parole," which they perceive as required by *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). In this case a record of the vacation proceeding was provided. This record reflects that the sole subject of the inquiry was the appellant's possession of marihuana. Appellant's possession of the contraband was uncontested, and appellant admitted the possession but claimed he was unaware of the nature of the substance. The special court-martial convening authority's recommendation was based on this evidence. As the general court-martial convening authority acted solely upon the record before him, the "reasons" for his action and the "evidence" in support were manifest and in writing. As both the record of the vacation proceeding and the convening authority's action are contained in the allied papers, there is sufficient documentation to permit an appeal therefrom. Under the circumstances, there has been compliance with the requirement of *Morrissey*.

I would, therefore, affirm the decision of the United States Navy Court of Military Review.