**UNITED STATES**

v.

**Thomas William BORNEMAN, 399 74 1505, Aviation Ordnanceman Airman Apprentice (E–2), U. S. Navy.**

**NCM 80 0124.**

U. S. Navy Court of Military Review.

Sentence Adjudged 2 May 1979.

Decided 23 Dec. 1980.

CAPT Joseph M. Poirier, USMC, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and SANDERS and DONOVAN, JJ.

DONOVAN, Judge:

■ Appellant's single assigned error attacks the procedure by which his bad-conduct discharge, suspended for 6 months from the date of trial in accordance with his pretrial agreement, was vacated at a time

he contends was beyond the suspension period in which Naval authorities were empowered to act. The misconduct which prompted the vacation action was unauthorized absence.

Sentence was adjudged on 2 May 1979. Page three of the agreement provides in part that, "If awarded, a Bad Conduct Discharge shall be suspended for a period of six (6) months from the date sentence is adjudged." Paragraph 97*b, Manual for Courts-Martial, 1969 (Rev.)* (MCM), states in part:

An act of misconduct, in order to serve as a basis for vacation of suspension of a sentence, must occur within the period of suspension. Similarly, the order of vacation of the suspension must be issued prior to the end of the period of suspension.... The running of the period of suspension of a sentence is, however, interrupted by the unauthorized absence of the accused.

The *Manual of the Judge Advocate General* (JAGMAN), at § 0129b, states in part:

*Probationary period.* All suspensions shall be of the conditional remission type and shall be for a definite period of time. The running of the period of suspension of a sentence is interrupted either by the unauthorized and unexcused absence of the probationer or by commencement of proceedings to vacate suspension of the sentence. The running of the period of suspension of a sentence resumes: (1) as of the date the probationer's unauthorized and unexcused absence ends; or (2) as of the date of the interruption, due to initiation of vacation proceedings, if proceedings to vacate suspension of the sentence are concluded without vacation of the suspension.

Although the cited JAGMAN section does not address the tolling effect of initiation of vacation proceedings which *do* result in vacation of a suspended sentence, the Court of Military Appeals has provided authoritative interpretation of paragraph 88e(3), MCM, as it relates to what events toll the running of the period of suspension of a court-martial sentence. In *United States v. Rozycki,* 3 M.J. 127, 129 (C.M.A.1977), the Court of Military Appeals held that "the pending vacation proceedings [in *Rozycki*] interrupted the period of suspension."

Pursuant to his plea, appellant was found guilty of conspiracy to buy and possess marijuana and possession of marijuana. The convening authority honored the pretrial agreement in his 11 June 1979 action by suspending for the agreed period the forfeitures in excess of $150.00 per month for 3 months, confinement at hard labor in excess of 75 days and the bad-conduct discharge. In taking his action on 1 November 1979 the supervisory authority affirmatively found appellant not guilty of a third Charge, whose non-prosecution was part of the agreement, and otherwise approved the findings and sentence. Following his release from post-trial confinement, appellant was an unauthorized absentee 21–25 July 1979 and 26 July–2 August 1979. His post-trial transfer placed him on the rolls of the Personnel Support Detachment, Naval Air Station, Jacksonville, Florida, whose commanding officer imposed nonjudicial punishment on appellant 8 August 1979 for those two unexcused absences. Appellant concurs with the Government that the absences tolled the suspension period, although opposing counsel disagree on the exact day—count. On 10 January 1980, the supervisory authority exercising general court-martial authority over Naval Air Station, Jacksonville, an officer different than the one who reviewed and approved appellant's court-martial conviction now under review, vacated the suspended bad-conduct discharge. Given the apparent delay beyond the 6 months suspension period, appellant urged us to find the vacation a nullity.

The Government's reply included the proffer of a document dated 9 November 1979, which we admitted to the record. On 28 July 1980, however, we ordered the Government to furnish an affidavit showing how the 9 November document tolled the running of the suspension period or related to an event or document which did so. Appellate defense counsel was at that time requested to address additional issues:

(a) Whether the revocation decision in appellant's case was fatally deficient because of the omission by the officer exercising general court-martial authority to include a written statement "as to the evidence relied on and the reasons for revoking parole." *United States v. Bingham*, 3 M.J. 119, 123 (C.M.A.1977) quoting *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); JAGMAN § 0131a;

(b) Whether the vacation proceedings were initiated and completed within a reasonable period of time, *United States v. Bingham, supra; United States v. Rozycki*, 3 M.J. 127, 129 (C.M.A.1977), in view of the dates of the offenses, the nonjudicial punishment action taken thereon, the purported good conduct of appellant subsequent thereto, and the date vacation proceedings were commenced and concluded.

Appellant's supplementary brief argues views adverse to the Government's position on each of the above issues. In seeking affirmance, Government counsel argues compliance occurred as to both issues and submits two affidavits: one from Lieutenant Q who had signed the earlier submitted 9 November document, and one from RADM H, the successor supervisory authority who vacated the punitive discharge. Lieutenant Q signed the 9 November 1979 form "Vacation of Suspension Hearing Report" as "Legal Officer By direction of Commanding Officer NAS Jacksonville, Florida." His affidavit of 12 August 1980 recites in the subscription that he holds the same assignment at the same command. Therein he attests that Captain P, the commanding officer of NAS Jacksonville, imposed nonjudicial punishment on 8 August 1979 and "told AR Borneman that he was directing steps be taken to vacate the suspended portion of the sentence from the court-martial on 2 May 1979."

Appellant invites us to find as a fact that the Government did not commence vacation proceedings until November or December 1979 when, respectively, the military magistrate held a probable cause hearing or when the Commanding Officer, NAS recommended the supervisory authority vacate the suspension.

In *United States v. Bingham, supra* at 123, the Court of Military Appeals stated that "the practice in the military under Article 72 is deficient in not prescribing a preliminary probable cause hearing in cases where the probationer is confined on the basis of the alleged violation." Appellant misconstrues the nature of the magistrate's hearing in appellant's case; it was not a pre-condition for Article 72, 10 U.S.C. § 872 proceedings *per se*, but a prophylactic measure addressing the re-confinement of appellant as urged in *Bingham, supra*. We need not engage in discounting or counting portions of days, as we find as a fact that the vacation proceedings were initiated on 8 August 1979 when the commanding officer so informed appellant. This view is consistent with *United States v. Rozycki, supra* at 129, in which the Court of Military Appeals not only adverted to JAGMAN § 0129*b* which uses the term "initiation" but adopted its very use: "[I]f a probationer's misconduct occurred near the end of his period of suspension, unless initiation of vacation proceedings interrupts the running of the period ... [it] would terminate before the proceedings...." This view is consistent with elements of due process wherein notice to the member affected of a commander's intent allows the member to commence his defense. Given initiation of vacation proceedings within the suspension period, we reject appellant's initial assignment of error and turn to the supplementary assignments.

### WRITTEN STATEMENT OF EVIDENCE AND REASONS

■ The Government argues that RADM H's affidavit presents no new reasons for old action, as such documentary enhancement was proscribed by the Court of Military Appeals in *United States v. Hurd*, 7 M.J. 18, 19 n.1 (C.M.A.1979). Rather, the affidavit recites what was, in the Government's view, clearly in the record and obvious from his approval, vice disapproval, of the convening authority's recom-

mendation to him to vacate.[1] The general court-martial authority's affidavit restated the evidence he relied on as: the DD Form 455 information, the attachments thereto including evidence of two post-trial unauthorized absences. His reason to approve the recommendation to vacate was the unauthorized absences.

## WAS VACATION PROCEEDING COMPLETED IN TIMELY MANNER?

The Court of Military Appeals has cautioned that vacation proceedings "must be completed within a reasonable period of time." *United States v. Rozycki, supra* at 129. Other than citing us to *Dunlap v. Convening Authority*, 23 U.S.C.M.A.135, 48 C.M.R. 751 (1974), and *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), no further comments on that caution were provided. We understand that elements of procedural due process and public policy considerations prompted such protections. A serviceman should know where he stands and, if he is in disciplinary difficulties, be given notice, opportunity to be heard, access to witnesses to speak or write statements in his behalf, be promptly disciplined and have opportunity to appeal adverse actions. If the Government acts in a dilatory fashion, events fog in witnesses' memories, military witnesses rotate or face release from active duty and accuseds are held in suspense. With those comments, we now examine the chronology to reach a decision on the timeliness issue.

| | |
|---|---|
| Trial date | 2 May 1979 |
| Record authenticated | 10 May 1979 |
| Convening authority's action | 11 June 1979 |
| Notice of intention of vacation proceedings | 8 August 1979 |
| Supervisory authority's action | 1 November 1979 |
| Request for magistrate hearing | 9 November 1979 |
| Magistrate hearing | 14 November 1979 |
| Report of magistrate to convening authority | 19 November 1979 |
| Vacation hearing held and DD 455 signed | 7 December 1979 |
| Convening authority forwards vacation documents to supervisory authority | 14 December 1979 |
| Supervisory authority's decision | 10 January 1980 |

The Government argues that it could not act faster because the convening authority and the supervisory authority who acted on the record of trial were different than those who conducted the vacation proceedings, and that the record of trial was the foundational document whose approval was a precondition for clerical progress in the vacation proceedings. Some important events are now added to the chronology: 11 September 1979 (one month after being told he was to face vacation of suspension of the bad-conduct discharge) appellant was reported by the Director, Counseling and Assistance Center/Alcohol Rehabilitation Drydock, NAS Jacksonville as agreeing "to participate in Program" with the remark that the program could begin 17 Sep. 1979, 0800–0930 Mondays through Fridays for 20 sessions. On 16 October 1979, that Director reported to the NAS Legal Officer that appellant had completed the program satisfactorily. The defense counsel requested on 19 December 1979 that the supervisory authority exercise clemency since appellant had done his duties in a commendable fashion since the nonjudicial punishment had been imposed four months earlier and particularly in view of appellant's successful completion of the drug/alcohol abuse program. Significantly, neither the convening authority, the supervisory authority nor the supervisory authority's supplemental affidavit aver that appellant either resumed marijuana abuse or incurred any unexcused absences during these months such as to constitute an added reason to vacate the suspension.

1. The recommendation was signed by a staff officer "By direction". Given the fact finding as well as the discretionary power of the convening authority, including the power to dismiss, for any of various grounds, a proposal that vacation proceedings documents be forwarded to a general court-martial authority, it seems clear that submission of this recommendation is a judicial act which may not be delegated. *United States v. Bingham, supra* at 124. It follows that documents recording that decision should be personally signed by the convening authority. No reversible error exists here because the convening authority had pronounced his personal decision on 8 August 1979 to initiate the vacation proceedings and ratified that decision by personally signing the DD Form 455 on 7 December 1979.

■ Under the circumstances of record, we do find as a fact that a minimally adequate *explanation* of the evidence and of the reasons for the command decision to vacate the suspension are now set out in the record. We need not determine whether the passage of five months from notice on 8 August to action on 10 January was "a reasonable period of time", *United States v. Rozycki, supra* at 129. In view of the intervening good service of appellant, his successful drug rehabilitation and the manifest rehabilitation such assignment and continued service demonstrate, we do not find imposition of an unsuspended bad-conduct discharge appropriate under these circumstances. Article 66(c), 10 U.S.C. § 866(c), UCMJ.

Accordingly, the bad-conduct discharge is remitted. The findings and the remainder of the sentence, as approved on review below, are affirmed.

Chief Judge CEDARBURG and Judge SANDERS concur.