UNITED STATES

v.

**Mitchell D. BROOKS, 223 94 8504,
Private (E–1), U.S. Marine Corps.**

**NMCM 81 3315.**

U.S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 25 Feb. 1981.

Decided 27 Aug. 1982.

LT Lynn M. Maynard, JAGC, USN, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BYRNE and MALONE, JJ.

MALONE, Judge:

Pursuant to his pleas, appellant was found guilty at a special court-martial bench trial sitting at Camp Pendleton, California of a six month unauthorized absence from his overseas command, a violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was sentenced to be confined at hard labor for three months and to be discharged with a bad-conduct discharge. In accordance with appellant's pretrial agreement, the supervisory authority suspended the sentence in its entirety on 19 June 1981.

Five assignments of error are posited by appellate defense counsel. Four merit our comment. The fifth is conceded by appellant to have been mooted by the action of the supervisory authority vacating appellant's suspended sentence. Appellant's assignments of error are:

I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN HE CONSIDERED THE ABSENCE OF MATTER IN EVIDENCE AS AGGRAVATION IN SENTENCING, AND UNFAIRLY PREJUDICED THE APPELLANT BY PUTTING ON HIM THE BURDEN OF PRODUCING ADDITIONAL EVIDENCE IN EXTENUATION AND MITIGATION.

II

THE SUPERVISORY AUTHORITY ERRED WHEN HE ATTEMPTED TO CURE AN ERROR IN THE CONVENING AUTHORITY'S ACTION, WHICH FAILED TO SUSPEND THE BAD-CONDUCT DISCHARGE AND CONFINEMENT AT HARD LABOR IN ACCORDANCE WITH THE PRETRIAL AGREEMENT, BY SUSPENDING A PERIOD OF CONFINEMENT AT HARD LABOR WHICH HAD ALREADY RUN.

IV

THE CONVENING AUTHORITY ERRONEOUSLY PLACED APPELLANT IN CONFINEMENT PRIOR TO THE VACATION ORDER OF THE GENERAL COURT-MARTIAL AUTHORITY.

V

THE EVIDENCE ON WHICH THE SUPERVISORY AUTHORITY RELIED TO WARRANT VACATION OF THE SUSPENSION OF APPELLANT'S SENTENCE WAS INSUFFICIENT.

I

During presentencing proceedings, Government counsel offered the court below no evidence upon which to base its sentence other than the offense of which appellant was convicted and the data normally contained on page one of the charge sheet. This prompted the following exchange between the court and counsel:

MJ: Government counsel, do you have any matters in aggravation?

TC: Trial Counsel has no evidence of previous convictions, your Honor.

MJ: All right. Of course, I would simply state that paragraph 75 of the Manual not only covers convictions but,

you know, the two most prevalent used are 75(b) and 75(d).[1]

TC: Yes, sir.

MJ: I hope I don't sound knit-picky but, you know, aggravation is more than that—

TC: Yes, sir.

MJ: —and I do that only to alert you.

(R. 21–22).

The military judge then informed appellant of his allocution rights and his rights to present evidence in extenuation and mitigation of the offense of which he stood convicted. Appellant offered in evidence three pages out of his service record which recorded his weapons firing record, Armed Services Vocational Aptitude Battery and Aptitude Areas scores, his military occupational specialty, civilian education, and service schools. He then testified in his own behalf wherein he gave the court evidence of his family background, how he had spent the period of his absence, including his recent marriage, his plans for the future, and how he intended to avoid future misconduct while serving in the Marine Corps.

At the conclusion of the defense case in presentencing, the following exchange took place between the military judge and the trial counsel:

MJ: Is there any rebuttal?

TC: Trial counsel has no rebuttal evidence, your Honor.

MJ: Well, of course, the court would only comment in terms of the evidence before the court that there is no requirement, but the accused has now been with his command, as it were, for close to six weeks. I just mention that to counsel and he can decide whether he wants to pursue that subject. If not, the court understands that both sides now have rested and the court is prepared to hear arguments on sentencing.

(R. 27).

At trial, defense counsel made no objection or comment to these exchanges between trial counsel and the military judge. Appellant, through his counsel, has since objected in both his *Goode*[2] response and before this Court, contending this latter remark by the military judge indicated a belief by the court there should have been more evidence concerning appellant's performance during the six weeks appellant was at his present command prior to trial. He further contends this indicates an improper inference being drawn by the military judge because of the absence of evidence in mitigation for that same six week period.

It is clear from the record, however, that the court's latter remarks were addressed not to the trial defense counsel but to Government counsel. Accordingly, there is no real basis for the belief the military judge improperly considered the absence of matter in evidence as aggravation in sentencing. *See United States v. Nichols,* No. 80 1268 (N.C.M.R. 9 January 1981). *See also United States v. Taylor,* 47 C.M.R. 445 (A.C.M.R.1973).

## II

Appellant avers that by suspending the entire period of confinement at hard labor to which appellant was sentenced, the supervisory authority thereby suspended a period of confinement which had already run. This is correct.

In keeping with the intent of the pretrial agreement negotiated by appellant with the convening authority, that officer granted appellant's request for deferment of sentence on 28 February 1981. That agreement required the convening authority to suspend all confinement and the discharge for a probationary period of six months from the date the convening authority took his action. Appellant, however, was again an unauthorized absentee when that action was taken on 6 April 1981, rescinding the deferment and approving the sentence without suspension.

1. Paragraphs 75*b* and 75*d, Manual for Courts-Martial, 1969 (Rev.).*

2. *United States v. Goode,* 1 M.J. 3 (C.M.A. 1975).

■ Because the pretrial agreement contained no misconduct clause which would permit the convening authority to void the terms of the agreement due to appellant's misconduct between the date of sentencing and the date of the convening authority's action, the supervisory authority suspended the sentence in its entirety for six months on 19 June 1981. In the meantime, appellant had terminated his unauthorized absence on 18 May 1981. It is well settled that a supervisory authority may not suspend a sentence to confinement that has already run. *United States v. Clark*, 10 M.J. 655 (N.C.M.R.1980); *United States v. Walzer*, 6 M.J. 856 (N.C.M.R.1979). It is equally true, however, that deferment of confinement and unauthorized absence both suspend the running of any adjudged confinement. Paragraphs 88f and 97f, *Manual for Courts-Martial, 1969 (Rev.)* (MCM), respectively.

■ It is thus apparent that the period beginning with the appellant's return on 18 May 1981 until the supervisory authority took his action on 19 June 1981 must be considered as time during which appellant's sentence to confinement at hard labor was running. Hence, a total of 33 days confinement had elapsed, with the remaining 58 days of appellant's sentence to confinement suspended by the action of the supervisory authority. Department of the Navy Corrections Manual, SECNAVINST 1640.9, 19 June 1972, as revised, Arts. 1010 and 1015.

## IV

For easier understanding of the events dominating this issue, the following chronology is offered:

| | |
|---|---|
| 25 Feb 81 | Sentence adjudged; sentence deferred; |
| 30 Mar 81 | Appellant commenced unauthorized absence; |
| 6 Apr 81 | Convening Authority's (CA's) action approves sentence without suspension; deferment rescinded; |
| 18 May 81 | Absence terminated; |
| 20 May 81 | Appellant confined; |
| 27 May 81 | Appellant released; |
| 19 Jun 81 | Supervisory Authority's (SA's) action approves and suspends entire sentence; |
| 22 Jun 81 | CA holds vacation hearing; |
| 2 Jul 81 | Appellant confined; |
| 27 Aug 81 | SA vacates suspension; appellant released from confinement. |

Appellant contends that the actions of the convening authority causing appellant to be placed in confinement from 20–27 May 1981 and 2 July–27 August 1981 were illegal, requiring the reassessment of appellant's sentence. Appellant argues that the convening authority violated appellant's right to due process when confining appellant in each instance without benefit of or in contravention of established procedures for the vacation of suspended sentences. Appellant is correct only in his contention that the former period of confinement was illegal. Neither period was illegal, however, for the reasons cited by appellant.

Citing *United States v. Bingham*, 3 M.J. 119 (C.M.A.1977) and *United States v. Batteas*, 5 M.J. 631 (N.C.M.R.1978), appellant argues that he was illegally confined during the former seven day period when the convening authority caused him to be confined upon his return from his post-trial unauthorized absence without benefit of a vacation hearing. The requirement and procedures for such hearings were defined in *Bingham* and in *United States v. Rozycki*, 3 M.J. 127 (C.M.A.1977). *Batteas* concerned a convening authority who acted personally to vacate BTFA Batteas' already suspended sentence without benefit of a vacation hearing.

Of course, in our present case, Private Brooks' sentence to confinement had yet to be suspended. By ordering Brooks into confinement, the convening authority below was acting to effectuate a sentence which he thought, albeit erroneously, had been approved notwithstanding the terms of the pretrial agreement. It was not before 19 June 1981 that the convening authority realistically could be expected to have held a vacation hearing. As shown, Brooks had already been released from confinement before that date.[3]

3. The record provides no evidence of the reasoning behind appellant's release, only that he

The Government argues that this confinement was apparently pretrial confinement resulting from appellant's most recent period of post-trial absence, or, if not, so minimal a violation of appellant's rights as to not require remedial action by this Court. We disagree with the proposition that this period of confinement was pretrial confinement not chargeable to appellant's service of his present sentence. The record, including the Daily Reports of the Camp Pendleton Correctional Facility, will not support such a finding. It was, instead, confinement served contrary to the terms of appellant's pretrial agreement which had yet to be given effect. For the reasons developed more fully below, however, further sentence relief is unwarranted.

■ We turn now to the question of the legality of the 56 day period of confinement served by appellant subsequent to the vacation hearing conducted by the convening authority on 22 June 1981. But for the sufficiency of the evidence presented at that hearing and relied upon by the supervisory authority when ordering the suspension vacated (see Assignment of Error V, *infra*) and the action of the convening authority causing appellant to be confined prior to the supervisory authority taking that action, appellant does not otherwise contest the validity of the proceedings. All other procedural safeguards and requirements were met in compliance with statutory, regulatory, and judicial fiat. Article 72, UCMJ, 10 U.S.C. § 872; paragraph 97*b*, *MCM*; § 0131a, Manual of the Judge Advocate General (JAGMAN); *United States v. Bingham, supra; United States v. Rozycki, supra.*

Appellant chooses to interpret the actions of the convening authority on 22 June 1981, when holding the vacation hearing, and on 2 July 1981, when ordering appellant into

confinement, as preempting the prerogative of the general court-martial authority. Article 72, UCMJ. Such an act of the convening authority himself ordering the suspension vacated would be a nullity. In support of appellant's theory is the phrasing of the recommendation itself, which concludes with the following phrase:

> It is recommended that the following disposition be made of this case . . . : that the suspension of the sentence to Bad Conduct Discharge (sic) and Confinement Hard Labor (sic) times three months is (sic) vacated.

Report of Proceedings to Vacate Suspension, DD Form 455, 22 June 1981.

Yet, had the convening authority himself intended to vacate the suspension, would he not then have ordered appellant immediately into confinement rather than waiting another ten days? We think so. In fact, the report is addressed to the officer exercising general court-martial authority with the penultimate section containing the words "recommendation" or "recommended" in three places immediately preceding the signature of the convening authority. Thus, we are convinced there was no attempt by the convening authority to take upon himself the responsibility of the supervisory authority to the total exclusion of that officer.

The fact remains, however, that appellant was ordered into confinement before the supervisory authority exercised his statutory responsibilities. The Government urges this Court now to dismiss this assignment of error and find appellant to have been confined pursuant to the provisions of § 0131c, JAGMAN. That section, made a part of the Manual of the Judge Advocate General in direct response to the *Bingham* decision, establishes procedures for the confinement of probationers prior to the vacation of their suspended sentences.

---

was released by the order of the convening authority. The convening authority may have had a cause to believe appellant no longer required physical restraint. More likely he may have been alerted to the error of his previous action by either the supervisory authority's staff judge advocate or maybe even the trial defense counsel himself. *See United States v.*

*Palenius,* 2 M.J. 86 (C.M.A.1977). That officer's affidavit discloses he was aware of Brook's confinement within 24 hours of the event. A magistrate may even have ordered appellant's release, although the trial defense counsel disclaims any knowledge of such an event.

In *Bingham, supra,* the Court of Military Appeals had occasion to measure the military procedures for vacation of a suspended sentence against the requirements of constitutional due process expounded in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) for parole revocation. Two striking differences were noted between the military procedure followed pursuant to Article 72 and the referenced Manual paragraph and those standards set forth in *Gagnon* and in *Morrissey.*

The first difference concerned the fact that Article 72 prescribed a single hearing process which served as the basis for any vacation action. On the other hand, both *Gagnon* and *Morrissey* require a two stage hearing process when the continued detention of the individual is desired following his arrest for parole violation but prior to holding the formal parole revocation hearing. The first stage of this two step process is "in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions." *Morrissey, supra* at 485, 92 S.Ct. at 2602. The Court above found this lack of a preliminary probable cause hearing in our military practice under Article 72 to be a constitutional deficiency. *Bingham, supra* at 123.

The second major difference between the military system and the standards mandated by *Gagnon* and *Morrissey* has to do with what is required of the official who actually decides whether probation or parole ought to be revoked. However, in analyzing these standards, the Court above was quick to point out that in the military service, the hearing officer conducting the second stage hearing will not be the same entity as that making the final decision, whereas such identity is the case in the civilian milieu. "The hearing officer is the special court-martial convening authority, while the decision maker is the general court-martial convening authority (footnote omitted) in all cases emanating from general courts-mar-

tial with approved sentences including a bad-conduct discharge." *Bingham, supra* at 123. Judge Perry, writing for the *Bingham* Court, then found this separate, non-coterminous fact finding and decision making process to be constitutionally permissible. *Id.* at 123.

With such an imprimatur on the duality of our system whereby two separate entities combine their efforts to perform the analogous task of the civilian parole board, we can only conclude then that appellant's final period of confinement was not illegal. After all, appellant has received the benefit of the complete panoply of procedural safeguards required at the second stage revocation hearing; that benefit was not limited merely to the minimal safeguards required at the preliminary hearing. Indeed, when the civilian parolee is detained for parole violation and receives immediately the formal revocation hearing in the first instance, one would not expect to seriously consider his complaint that by receiving only the formal hearing he has been denied his right to a determination whether there exists a probable cause or reasonable ground to believe that he has committed the alleged violation of his parole conditions. By the very nature of his recommendation, the convening authority has made such a determination and, thus, complied with the requirements of section 0131c, JAGMAN.

Reaching this conclusion, it is clear that we interpret the requirement, that the person conducting the preliminary hearing be an independent officer, to have been met when the convening authority fulfills that function. This requirement for independence arises from the Supreme Court's reluctance to place this task in the hands of the supervising parole officer who, in determining the need to arrest and detain his parole violator-charge, does so in the exercise of his police functions. As we have seen, however, the convening authority as an adjunct part of the "parole board" hearing and decision making process is not in such a similar position as that parole officer as to be directly involved in the case. *See Morrissey, supra* at 485, 92 S.Ct. at 2602.

## V

■ Appellant next contends that the Unit Diary Card introduced at appellant's vacation hearing as evidence of appellant's violation of the UCMJ does not measure up to even the reduced standards set as evidentiary guidelines for vacation of a suspended sentence in *United States v. Dupuis,* 10 M.J. 650 (N.C.M.R.1980). There, this Court stated:

> In *Morrissey,* the Supreme Court found that due process requires a hearing structured to assure that the finding of a parole violation will be based on verified facts and that the exercise of discretion in determining the need to revoke parole be based on an accurate knowledge of the parolee's behavior. In our opinion this requires the use of no less than a preponderance of the evidence standard.

*Id.* at 655.

When the admission of the unit diary card, a common record maintained in the normal course of Marine Corps personnel administration, was not objected to by appellant or his counsel at the vacation hearing, both the convening authority and the supervisory authority were justified in their conclusion that proof of appellant's violation of his probation had been proven by a preponderance of the evidence. Nothing more was required.

■ There only remains to be discussed what remedy, if any, is required to be afforded to remedy the erroneous act of the supervisory authority in suspending a period of confinement, 33 days, which had already run and that of the convening authority in confining appellant seven days in violation of the terms of the pretrial agreement. We do not find any relief to be warranted or required, however. First, inasmuch as the full term of the sentence to confinement has run, only 63 days of which appellant has served in actual physical restraint, the issue of sentence relief is moot. *United States v. Brownd,* 6 M.J. 338 (C.M.A. 1979). Further, in view of the small amount of possible prejudice to appellant for his subjection to, at the most, five days' confinement in excess of that amount of confinement which properly could have been suspended, and vacated, we do not find it appropriate to adjust the only other aspect of appellant's sentence capable of adjustment, *i.e.,* the bad-conduct discharge. *See United States v. Heard,* 3 M.J. 14, 23 (C.M.A.1977).

Accordingly, the findings of guilty and the sentence, as approved, probationally suspended, and vacated on review below, are affirmed.

Senior Judge GLADIS and Judge BYRNE concur.