BAKER, Judge, with whom CRAWFORD, Chief Judge,
joins (dissenting):
In Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Su *306 preme Court recognized a tension between due process fact finding and the informal nature of parole revocation hearings. We have been cognizant of these tensions as applied to vacating suspended sentences in the military, United States v. Bingham, 3 M.J. 119 (C.M.A.1977), but in my view the majority here swings the pendulum too far in the direction of procedural form and away from essential substance. The unfortunate consequence is an unnecessarily burdensome vacation procedure that may discourage commanders from suspending sentences where such suspension is warranted. Consequently, I respectfully dissent.

Discussion

Appellant’s vacation package included the following:
(1) The report of the lab indicating that a member with Appellant’s Social Security Number had tested positive for drug use.
(2) Paperwork reflecting the chain of custody for the urine sample in question.
(3) A report of the imposition of punishment pursuant to Article 15, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. § 815 (2000) on July 1, 1996, and her subsequent appeal reflecting, inter alia, (a) the Commanding Officer’s determination by a preponderance of the evidence that Appellant had knowingly and wrongfully used methamphetamine; and, (b) that while Appellant was aware of her right to contest the charged conduct at a court-martial, she had ultimately accepted an Article 15.
(4) A two-page written statement from Appellant providing her account of events leading to her innocent ingestion of the methamphetamine.
(5) A statement from Appellant’s daughter and her daughter’s boyfriend stating their accounts of Appellant’s innocent ingestion of the drug.
Before making her vacation recommendation to the General Court-martial Convening Authority (GCMCA), the Special Court-martial Convening Authority (SPCMCA), acting as hearing officer, reviewed this documentation and took oral testimony from Appellant. Appellant’s testimony describing the events leading to her innocent ingestion of the methamphetamine was consistent with her written statement.
The hearing officer subsequently forwarded the documentation cited above, the hearing transcript, and her recommendation to the GCMCA. The transcript includes the following statement made by the hearing officer:
I have carefully looked over your issue. The bottom line is that I am not going to vacate your suspended sentence. That is the first thing, not because I don’t think you’re guilty, but because three years ago, the Navy should have done it correctly. Therefore the Federal Government and U.S. Navy should be held responsible for this. You should not have to come back three years later because the Navy didn’t do its’ [sic] job correctly the first time. I am not positive whether I buy your story or not. I have been here nine months at [Transient Personnel Unit (TPU)], and I don’t buy many stories. Whether you knowingly ingested it or not, I don’t know. I believe you showed poor judgment in having an individual of that character in your house with your 17-year old daughter. I certainly hope that over the last three years you have seen the light, changed your behavior, and are now making a positive contribution to society.
I find that there was not probable cause to believe that the conditions of your suspension have been violated.
My recommendation is not to vacate the suspended sentence.
(Emphasis added.)
The majority concludes that the vacation package sent to the GCMCA lacked three requisites: (1) a written evaluation of the contested facts; (2) a resolution of the contested facts; and, (3) a written determination of whether the facts, as found, warranted vacation of the suspension. The majority also states that “Miley had a substantial right to that step in the process and we will not speculate as to what decision the GCMCA may have made if the SPCMCA had properly evaluated and resolved the contested facts in the record.” 59 M.J. at 305. In *307 my view, this record, evaluation, and recommendation comply with applicable due process requirements. Black v. Romano, 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985); Gagnon v. Scarpeli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey, 408 U.S. at 471, 92 S.Ct. 2593; Bingham, 3 M.J. at 119.
The hearing officer’s evaluation and recommendation certainly could have been refined. But the vacation hearing was not intended to substitute for a judicial hearing; a hearing officer’s evaluation of facts and recommendation are not intended to conform to a military judge’s findings of fact and conclusions of law. The Court in Morrissey and Romano recognized that there is a tension in parole revocation hearings between due process and the informal nature of the proceedings in question. Morrissey, 408 U.S. at 484-85, 92 S.Ct. 2593 (“We now turn to the nature of the process that is due, bearing in mind that the interest of both State and parolee will be furthered by an effective but informal hearing.”); Romano, 471 U.S. at 611, 105 S.Ct. 2254 (“Our previous cases have sought to accommodate these [probationers’ and States’] interests while avoiding the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings or interfere with exercise of discretion by the sentencing authority.”). As a result, the Supreme Court sought a balance between the two and signaled to the legal field that subordinate courts should do the same when addressing comparable processes. Referring to the preliminary hearing of a two step parole revocation process the Supreme Court in Morrissey wrote:
“[T]he decision maker should state the reasons for his determination and indicate the evidence he relied on ...” but it should be remembered that this is not a final determination calling for “formal findings of fact and conclusions of law.” No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error.
408 U.S. at 487, 92 S.Ct. 2593 (quoting Goldberg v. Kelly, 397 U.S. 254, 271, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)).
In striking the Morrissey balance in the military context, I believe the majority overlooks the Court’s caution regarding what it referred to as “formalism.” In this case, the hearing officer garnered the facts, evaluated them, and stated reasons supporting her recommendation. The hearing officer found the facts inconclusive:
I am not positive whether I buy your story or not. I have been here nine months at TPU, and I don’t buy many stories. Whether you knowingly ingested it or not, I don’t know.
Although the hearing officer might have better documented her conclusion that she could not determine who was telling the truth, I would not require a hearing officer to reach a factual conclusion when in her view the evidence does not support one factual conclusion over another. That is a conclusion in its own right that the GCMCA can effectively consider while exercising his duty to decide on vacation and “complete a written statement ‘as to the evidence relied on and the reasons for revoking parole’.” Bingham, 3 M.J. at 123 (quoting Morrissey, 408 U.S. at 489, 92 S.Ct. 2593). Further, the hearing officer ultimately based her recommendation on equitable grounds involving the procedural history of the case as opposed to her evaluation of the underlying facts. I do not see this as problematic, however, since she stated on the record her rationale for doing so. The GCMCA remained free to agree or disagree with the hearing officer’s recommendation and reasons and had a full record on which to assess her reasoning and base his independent conclusions.
The more intensive procedures the majority desires will likely discourage convening authorities from suspending sentences as it may now appear too difficult for SPCMCAs to create a reversal-proof record. This would be an unfortunate result. Suspended sentences serve important societal and military interests. They can be used to provide essential income for innocent dependents compelled to transition to civilian society as a result of the military member’s conduct. Moreover, a suspended discharge may give a commanding officer further time and oppor *308 tunity to assess the rehabilitation potential of a once promising service member. Suspended sentences also serve to regulate and encourage good conduct while service members await discharge or serve confinement.
Vacation hearings might benefit from the sort of findings of fact more familiar to military judges than to commanding officers. However, I believe such a requirement is neither compelled as a matter of due process nor currently found in Article 72, UCMJ, 10 U.S.C. § 872 (2000) or Rule for Courts-Martial 1109. The vacation record should include a transparent rendering of what occurred and why as well as a rendering of the evidence, but the process should not unduly burden commanders so as to discourage them from suspending sentences where they are warranted.
In this case, the GCMCA had all the available facts and arguments on his desk. He also had the hearing officer’s honest, transparent, and albeit ultimately uncertain assessment of Appellant’s defense on his desk. In my view, Appellant received the process due and had fair opportunity to make her case. As a result, I respectfully dissent.