UNITED STATES, Appellee,

v.

Richard L. COVINGTON, Private, U. S. Army, Appellant.

No. 38,681.
CMR No. 14251/S.

U. S. Court of Military Appeals.

Nov. 24, 1980.

For Appellant: *Colonel Edward S. Adamkewicz, Jr., Major Carlos A. Vallecillo, Captain Courtney B. Wheeler* (on brief)· *Lieutenant Colonel John F. Lymburner.*

For Appellee: *Major Ted B. Borek, Major Robert B. Williams, Captain Lawrence W. Fitting* (on brief); *Colonel R. R. Boller, Captain James A. Pritchett.*

## Opinion of the Court

EVERETT, Chief Judge:

The appellant was tried by special court–martial at Fort Stewart, Georgia, and contrary to his pleas, was found guilty of assault upon a noncommissioned officer, disobedience of a lawful order, and disrespect to a noncommissioned officer, all in violation of Article 91 of the Uniform Code of Military Justice, 10 U.S.C. § 891. His sentence to a bad–conduct discharge and confinement at hard labor was approved by the convening authority, and both the findings and the sentence were affirmed without opinion by the United States Army Court of Military Review. We granted review to consider two issues concerned with the admissibility of records of nonjudicial punishment. 9 M.J. 67. As a result of our decision in *United States v. Mack*, 9 M.J. 300 (C.M.A.1980), only the second issue now requires our attention. It reads:

> PROSECUTION EXHIBIT 5, PROCEEDING IN VACATION OF SUSPENDED PUNISHMENT GIVEN UNDER ARTICLE 15, UCMJ, IS INADMISSIBLE SINCE IT FAILS TO MEET THE MINIMUM DUE PROCESS CONSIDERATIONS ANNOUNCED IN *UNITED STATES V. BOOKER*, 5 M.J. 238 (C.M.A.1977), [*vacated in part*], 5 M.J. 246 (C.M.A.1978).

At the presentencing stage of the proceedings, the prosecution sought to introduce against the appellant prosecution exhibits 3 and 4–records of nonjudicial punishment–as well as prosecution exhibit 5–a completed DA Form 2627, indicating the vacation of a suspension of a portion of one of the nonjudicial punishments. The defense counsel objected to prosecution exhibits 3 and 4, pointing to noncompliance with the procedural mandate of *United States v. Booker, supra*. He further opined that if these objections were sustained, prosecution exhibit 5 would be irrelevant. When the judge asked, then, whether defense counsel wished to object to the latter exhibit as well, counsel responded in the affirmative.

■ The questioned entry on prosecution exhibit 5, which appears on the form under Part III, headed "Attachments and Comments," reads:

> *Part III–Attachments and/or Comments*
>
> The suspension of punishment of Reduction to E–1/PVT COVINGTON, RICHARD L., 197–52–2939, Co A, 3rd Bn, 19th Inf on 10 April 1979 is hereby vacated. The unexecuted portion of the punishment will be duly executed.

Presumably, the entry was made pursuant to the direction in Army Regulation 27–10 that, "[a]ction vacating a suspension will be recorded in accordance with Notes 10 and 11, Part III, DA Form 2627." *See* para. 3–17, "Suspension." No reason is stated for vacation of the suspension. However, since typically a decision to vacate a suspension of nonjudicial punishment is predicated on "derogatory or adverse information" concerning the probationer, *see* para. 134, Manual for Courts–Martial, United States, 1969 (Revised edition), a court–martial member or military judge engaged in sentencing an accused would probably infer that the vacation of suspension reflected some type of misconduct by the accused. Thus, if the information about vacation of suspension is inadmissible, its introduction in evidence could be prejudicial.[1]

---

1. Prosecution exhibit 5 reflects the vacation of the suspension of the nonjudicial punishment

which was the subject of prosecution exhibit 4. The first issue on which we granted review

Article 15(a), UCMJ, 10 U.S.C. § 815(a), authorizes the President to issue regulations prescribing rules "with respect to the suspension of [nonjudicial] punishments." Pursuant thereto, the President has prescribed certain rules in paragraph 134 of the Manual. One such rule is that

[v]acation of suspension may be effected by any commanding officer or officer in charge competent to impose upon the offender concerned punishment of the kind and amount involved in the vacation of suspension.

Although a formal hearing is not necessary to vacate a suspension, if the punishment suspended is of the kind set forth in article 15(e)(1)–(7), the probationer should, unless impracticable, be given an opportunity to appear before the officer authorized to vacate suspension of the punishment to rebut any derogatory or adverse information upon which the proposed vacation is based, and may be given the opportunity so to appear in any case.

The punishments enumerated in Article 15(e)(1)–(7) are arrest in quarters or correctional custody for more than 7 days; forfeiture of more than 7 days' pay; reduction of one or more pay grades from the fourth or a higher pay grade; extra duties or restriction for more than 14 days; or detention of more than 14 days' pay. These are the same nonjudicial punishments for which the Code requires that, in the event an accused appeals to the next superior authority, the case shall be referred "to a judge advocate of the Army, Navy, Air Force, or Marine Corps, or a law specialist or lawyer of the Marine Corps, Coast Guard, or Treasury Department for consideration and advice."

■ Neither the Code nor the Manual contains provisions which suggest to us that counsel is required in connection with vacation of a suspension. Nonjudicial punishment is not a "criminal prosecution" for purposes of the Sixth Amendment. *Middendorf v. Henry*, 425 U.S. 25, 37, 96 S.Ct. 1281, 1288, 47 L.Ed.2d 556 (1976). However, even if it were, vacation of a suspension would not be part of the "criminal prosecution." *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Furthermore, the context in which a vacation of suspension occurs does not suggest that in the usual case "due process" requires the provision of counsel to the probationer. *See Gagnon v. Scarpelli, supra; cf. Middendorf v. Henry, supra.*

Appellant relies on *Gagnon v. Scarpelli, supra*, and on *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), which establish these "minimum requirements of due process" for a probation or parole hearing:

(a) written notice of the claimed violations of [probation] parole; (b) disclosure to the [probationer] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross–examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole.

concerned the admissibility of prosecution exhibit 4 and another similar record of nonjudicial punishment. In connection with his contention that these records were inadmissible, appellant argues that *the entry as to vacation of the suspension was inadmissible.* The logic is indisputable, since if the record of nonjudicial punishment was not directly admissible, the Government should not be allowed to prove indirectly the existence of such punishment by proof that the suspension of punishment had been vacated. However, the premise is faulty,

since prosecution exhibit 4 was admissible under *United States v. Mack*, 9 M.J. 300 (C.M.A. 1980). A question might be raised about the relevance of the evidence concerning the vacation of suspension absent information about the reason for the vacation. However, for sentencing purposes it has some minimal relevance in revealing the punitive measures previously employed to deter misconduct by the accused and the lack of success of such measures.

*Morrissey v. Brewer, supra* at 489, 92 S.Ct. at 2604. *Accord, United States v. Bingham*, 3 M.J. 119, 121–22 (C.M.A.1977).

█ The right to confront and cross–examine adverse witnesses has never been a part of the procedure for imposing nonjudicial punishment–a procedure that implicitly the Supreme Court approved in *Middendorf v. Henry, supra*. Likewise, it is uncertain that the commander who vacates the suspension would be "neutral and detached" within the meaning of the "minimum requirements" on which appellant relies. It would be strange if the vacation of suspension were subject to higher requirements than is the imposition of nonjudicial punishment in the first instance. Therefore, we do not consider that vacation of a suspension of nonjudicial punishment is subject to these same "minimum requirements."

█ In view of the safeguards which surround the imposition of nonjudicial punishment in the first instance, the circumstance that a probationer had already been found guilty by his commander and had had the opportunity to appeal from that determination, the relatively limited punishment imposable under Article 15, and the underlying purposes of nonjudicial punishment in the armed services, we conclude that the safeguards provided by paragraph 134 of the Manual meet any "due process" requirements in those situations to which they apply. Those safeguards, it will be recalled, include "an opportunity to appear before" the person who will decide on vacating the suspension and "to rebut any derogatory or adverse information upon which the proposed vacation is based." Rebuttal, of course, implies some notice of the contents of the "information" upon which the proposed vacation is to be based. The "opportunity to appear" is to be granted "unless impracticable." Perhaps this limitation is intended to cover situations in which the probationer is absent without authority or, because of transportation problems, cannot be present. In any event, we infer that the limitation is to be construed narrowly.

In the case at hand, nonjudicial punishment which had been suspended consisted of 7 days' correctional custody and reduction to the lowest pay grade. Since the correctional custody was not more than 7 days and the reduction was not from the "fourth or a higher pay grade," the vacation of suspension was not one for which, under paragraph 134, "an opportunity to appear" was necessary "unless impracticable." What "minimum requirements," if any, apply to the vacation of suspension of nonjudicial punishment under these circumstances?

The Supreme Court has extended "due process" requirements into new areas–especially where personal liberty is involved. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Gagnon v. Scarpelli, supra; Morrissey v. Brewer, supra*. However, the requirements have been fashioned with suitable regard to the proceedings to which they would be applied. For example, with due deference to the "institutional interests" of correctional facilities, the Supreme Court declined to rule that "confrontation and cross–examination of those furnishing evidence against the inmate were to be allowed as a matter of course" in prison disciplinary proceedings. *Wolff v. McDonnell, supra* 418 U.S. at 567, 94 S.Ct. at 2980.

As the Supreme Court made clear in *Middendorf v. Henry, supra*, the informal procedure of nonjudicial punishment serves important "institutional interests" of the armed services. Extensive hearing requirements in connection with vacation of suspensions of nonjudicial punishment would defeat some of the very purposes for which such punishment was designed in the first instance. Moreover, extensive procedural limitations on vacation of suspension might well induce reluctance to suspend such punishments.

█ The bedrock requirement of "due process" in connection with nonjudicial punishments which do not reach the threshold established by Article 15(e) (1)–(7) is notice of the information which has caused the commanding officer to propose vacation of the suspension and an opportunity to present the probationer's contentions as to

why the suspension should not be vacated. The notice can be written or oral-even by telephone. The probationer's opportunity for reply need not include personal appearance before the commander or presentation of evidence. However, like the suspension itself, the vacation thereof need be in writing. The primary concern is that the probationer be informed of the commander's intended action and the reasons therefor before the action is taken and that he have an opportunity to dissuade the commander from taking that action. Apart from instances of unauthorized absence on the probationer's part, it is improbable that compliance with such "minimum requirements" will be "impracticable"; and certainly a heavy burden would rest on a commander to justify failure to provide the notice and opportunity for reply.

In the case at hand, the entry on DA Form 2627 fails to indicate what opportunity has been given the probationer to know of the proposed vacation of suspension or to dissuade the commanding officer from taking this action. Indeed, our examination of other records of trial involving receipt in evidence of forms which recite that a suspension of nonjudicial punishment has been vacated suggests that the documents offered in evidence would seldom, if ever, reflect what opportunity, if any, had been given a probationer to rebut adverse or derogatory information on which a vacation was predicated. Is the absence of this information fatal to admissibility?

■ In the instance of punishments that fall within Article 15(e)(1)–(7), the provisions of paragraph 134 of the Manual afford some basis for invoking the presumption of regularity and concluding that, unless some evidence is offered to the contrary, the vacation of suspension was preceded by "an opportunity to appear" and "to rebut any derogatory or adverse information." Since neither the Manual nor Service directives to which our attention has been directed purport to establish prerequisites for nonjudicial punishments of less severity than those which are the subject of Article 15(e)(1)–(7), a basis for utilizing the presumption of regularity is more attenuated in such instances–at least, as to vacations of suspension which precede the publication of our opinion in the case at bar. Nonetheless, we have concluded that the burden of challenging the validity of the vacation of suspension should rest on appellant and that, absent his specific objection that the vacation of suspension was not preceded by the notice and opportunity to reply demanded in this opinion, the vacation of suspension should be presumed to have been lawfully accomplished. We also note that where nonjudicial punishments are involved which are of less severity than those set forth in Article 15(e)(1)–(7), the likelihood is small of prejudice to an accused from erroneous admission in evidence of a record of vacation of a suspension. The normal inference of the sentencing authority would be that if the derogatory or adverse information concerning the accused warranted no penalty other than vacation of the suspension of a relatively minor nonjudicial punishment, then any misconduct revealed in that information was not serious.

Applying the foregoing principles to the case at bar, we must decide the second issue against the appellant and so the decision of the United States Army Court of Military Review is affirmed.

Judge FLETCHER concurs.

Judge COOK concurs in the result.