462

**UNITED STATES, Appellee**

v.

**Richard M. CONNELL, Seaman Recruit U.S. Navy, Appellant.**

No. 94–0486.
CMR No. 92 2547.

U.S. Court of Appeals for
the Armed Forces.

Argued Feb. 16, 1995.

Decided Sept. 22, 1995.

For Appellant: *Commander Mary T. Hall,* JAGC, USN (argued); *Commander Philip D. Cave,* JAGC, USN, and *Lieutenant Brian C. Lansing,* JAGC, USNR (on brief).

For Appellee: *Major Laura L. Scudder,* USMC (argued); *Commander S.A. Stallings,* JAGC, USN (on brief); *Colonel T.G. Hess,* USMC.

### Opinion of the Court

WISS, Judge:

1. Pursuant to provident guilty pleas, a special court-martial, military judge sitting alone, convicted appellant of absence without leave (AWOL) (59 days); and contrary to his pleas, convicted him of missing movement by design, *see* Arts. 86 and 87, Uniform Code of Military Justice, 10 USC §§ 886 and 887, respectively. The judge sentenced him to a bad-conduct discharge, confinement for 90 days, and forfeiture of $522.00 pay per month for 3 months. The convening authority approved these results, but he suspended execution of the punitive discharge for a period of 12 months in response to appellant's request for clemency. In due course, the Court of Military Review[1] affirmed in an unpublished opinion.

2. Prior to suspension of his punitive discharge, appellant returned to his ship from appellate leave. Within a month of his return, he again went AWOL for 5 days. Three days after his return from this AWOL, appellant's commander, who had been the convening authority of his special court-martial, imposed nonjudicial punishment on appellant for this absence. *See* Art. 15, UCMJ, 10 USC § 815; Hearing Officer Exhibit 3.

3. As well, the absence was the basis for subsequent proceedings to vacate the suspension. Pursuant to RCM 1109(d)(1),[2] this same special court-martial convening authority conducted an initial hearing on the alleged violation of the conditions of suspension.[3]

Acting on the basis of the report and recommendations of this officer, the general court-martial convening authority concluded that appellant had violated a condition of his suspension and that, accordingly, the suspension should be vacated. *See* RCM 1109(d)(2). He implemented this decision by a supplemental action on the court-martial.

4. In this Court, appellant questions whether his "due process rights under the Fifth Amendment were violated by the requirement that the convening authority serve as the hearing officer for a vacation hearing, and more particularly, by the personal interest exhibited by the convening authority in this case." 40 MJ 54.[4] We hold that appellant was not denied any due process and that the vacation of his suspended bad-conduct discharge was lawful.

### I

5. RCM 1109 sets forth in detail the procedure that must be followed if a suspended execution of a court-martial sentence is to be vacated. Without unnecessary recital of minutiae, suffice it here to note that, where the sentence is of a general court-martial or where it is of a special court-martial and includes a bad-conduct discharge (as here), there are three markers along the pathway.

6. The first is encountered if the probationer is placed in confinement incident to his alleged violation of the conditions of suspension and a formal hearing on the alleged violation is not held within 7 days. RCM 1109(c)(4). Under these conditions, a "neutral and detached ... hearing officer" must "determine whether there is probable cause to believe that the probationer violated the conditions of the" probation. RCM 1109(c)(4) and (C); *United States v. Bingham,* 3 MJ 119 (CMA 1977). In appellant's case, the suspension addressed a punitive discharge, and appellant had fully served his

---

1. *See* 41 MJ 213, 229 n.* (1994).

2. Manual for Courts-Martial, United States, 1984.

3. RCM 1108(c) provides: "Unless otherwise stated, an action suspending a sentence includes as a

condition that the probationer not violate any punitive article of the code." Appellant acknowledged that his unauthorized absence violated this condition of his suspension.

4. *See* 41 MJ 340 n.2 (1995), for disposition of the second granted issue (40 MJ 54).

sentence to confinement, so he was not confined pending his vacation proceeding. Accordingly, this provision is not relevant here. *Id.* at 122–23.

7. The second requires "a hearing on the alleged violation of the conditions of suspension" that is to be held by the special court-martial convening authority "personally." RCM 1109(d)(1)(A). This provision implements the statutory mandate of Article 72(a), UCMJ, 10 USC § 872(a), that, before vacation of suspension of any general court-martial sentence or of a special court-martial sentence that includes an approved bad-conduct discharge, "the officer having special court-martial jurisdiction over the probationer shall hold a hearing on the alleged violation of probation." In this connection, a probationer enjoys due process that includes notice of the hearing; of the alleged violation; of the "right to be represented at the hearing by civilian counsel provided by the probationer or, upon request," by detailed military defense counsel; and of the "opportunity to be heard," to present his own evidence, and to "cross-examine adverse witnesses." RCM 1109(d)(1)(B).

8. The third prescribes a decision by the general court-martial convening authority as to "whether the probationer violated a condition of suspension, and, if so, whether to vacate the suspended sentence." RCM 1109(d)(2)(A). That decision is based on the hearing officer's summarized record of the earlier proceeding and written recommendation concerning the vacation. RCM 1109(d)(1)(D). Again, both the report and recommendation of the special court-martial convening authority and the decision-making by the general court-martial convening authority are specific creatures of statute. *See* Art. 72(b).

9. Appellant makes no claim that his command did not follow these procedural steps. Rather, his two-pronged attack is on the procedure itself, both systemically and as particularly followed in his case. He contends: first, that constitutional due process requires that a probationer's hearing officer under Article 72(a) be "neutral and detached" and that a probationer's special court-martial convening authority cannot meet this standard as a matter of law—Final Brief at 11–16; second, even if this categorical assault fails, the special court-martial convening authority who served as appellant's hearing officer was too biased and personally interested to satisfy due process—Final Brief at 16–22. Thus, it is regarding these constitutional claims that we proceed with our review.

II

A

10. It has been settled for nearly 2 decades that a citizen in uniform is as "entitled to the due process of law guaranteed by the Fifth Amendment" as is his civilian counterpart. *Middendorf v. Henry,* 425 U.S. 25, 43, 96 S.Ct. 1281, 1291–92, 47 L.Ed.2d 556 (1976); *see also Weiss v. United States,* —— U.S. ——, ——, 114 S.Ct. 752, 769, 127 L.Ed.2d 1, 25 (1994) (Ginsburg, J., concurring) ("[M]en and women in the Armed Forces do not leave constitutional safeguards and judicial protections behind when they enter military service."). In the context of civilian parole or probation revocation proceedings, the Supreme Court has made clear that due process requires, *inter alia,* a revocation hearing by "a 'neutral and detached' hearing body such as a traditional parole board ..." and "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole." *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972); *accord Gagnon v. Scarpelli,* 411 U.S. 778, 786, 93 S.Ct. 1756, 1761–62, 36 L.Ed.2d 656 (1973).

11. This Court had occasion in *Bingham* to address these due process guarantees of *Morrissey* and *Gagnon* in the context of our system's proceeding to vacate a suspended sentence. *See also United States v. Rozycki,* 3 MJ 127 (CMA 1977). The Court noted that, unlike the usual situation in civilian systems, Article 72 provides that these hearing and decision functions are split between the probationer's special court-martial convening authority and the general court-martial convening authority. Nonetheless,

the Court concluded "that it is constitutionally permissible for the . . . hearing function to be separate from the final decision-making function." *United States v. Bingham*, 3 MJ at 123. The question appellant poses here, then, is the next step in logical progression: Where those functions are split under Article 72, does *Morrissey*'s due process requirement of "a 'neutral and detached' hearing body" (¶ 10) apply only to the decision-maker (the general court-martial convening authority) or, as well, to the hearing officer (the special court-martial convening authority)?

12. In this case, we do not need to decide this broad constitutional challenge, because we hold that appellant's special court-martial convening authority, who conducted his revocation hearing, met that standard. *See* Part III, *infra.* Before moving to that discussion, however, we are moved to offer brief comment on one aspect of the Government's argument relating to the foregoing.

B

13. To whatever extent *Morrissey* and *Gagnon* might fully apply in this respect to military suspension-revocation hearings, the Government attempts to distinguish those cases from this one on the basis of the nature of the interests at stake. Correctly, the Government points out that the two civilian cases involved liberty interests—that is, the revocations there resulted in reincarceration; whereas, in the present case, "only [appellant's] bad-conduct discharge is at risk . . . ."—an interest that the Government characterizes as a "property interest." Answer to Final Brief at 4 and 5.

14. With this predicate as a springboard, the Government argues that the process that is due appellant and others like him is different. In this connection, the Government reminds us that the Supreme Court long has recognized that

" '[d]ue process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). . . .

*Mathews v. Eldridge*, 424 U.S. 319, 354, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976).

15. The Government's argument necessarily would lead to a different procedure where suspended confinement was in issue from where a suspended punitive discharge was on the line. Nothing in Article 72, however, indicates that the character of the procedure set forth there would depend upon the nature of the sentence that had been suspended. Further, we note that *Bingham* itself involved a suspended punitive discharge, not confinement; yet, the *Bingham* Court gave no suggestion that that factor was relevant in determining whether the elements of due process prescribed in *Morrissey* and *Gagnon* fully applied to Article 72's vacation procedures. *See also United States v. Rozycki, supra* (punitive discharge in issue).

16. Most important, however, is the Government's diminution of the nature of a punitive discharge. While not literally involving "liberty" in the sense of bars on the windows and doors, it certainly has certain points of comparison. We know, for instance, that a punitive discharge might lawfully be commuted into some length of confinement, *cf. Waller v. Swift*, 30 MJ 139 (CMA 1990), so in that regard it is quite closely akin to a liberty interest. *See* RCM 1107(d)(1) and Discussion. Further, unlike other interests to which the Government likens a punitive discharge as a "property interest," such a discharge—which can result only from the sentence of a court-martial—carries with it "the stigma and hardships of a criminal conviction . . . ." *See Mathews v. Eldridge*, 424 U.S. at 333, 96 S.Ct. at 902.

17. Accordingly, if *Morrissey*'s mandate of due process requires that the hearing officer under Article 72 be "neutral and detached," like the decision-making function—a question that we reserve for another day—it would appear that the process is due whether the suspension was of confinement or of the execution of a punitive discharge.

III

A

18. This, then, brings us to appellant's contention that, *if* the hearing officer under Article 72 must be neutral and detached, "a probationer's special court-martial convening authority is not sufficiently 'neutral and detached' to serve as the hearing officer mandated by *Morrissey v. Brewer*" (*supra*) "[b]ecause of command structure and conflicting interests." Final Brief at 11. In other words, special courts-martial convening authorities cannot qualify as being "neutral and detached" for this purpose as a matter of law. *Cf. United States v. Covington*, 10 MJ 64, 67 (CMA 1980) ("uncertain that the commander who vacates the suspension [of nonjudicial punishment] would be 'neutral and detached' within the meaning of the 'minimum requirements'" of due process).

■ 19. Appellant recognizes that his position directly challenges the mandate of Congress in Article 72(a) that special courts-martial convening authorities personally perform the hearing function—a duty that the *Bingham* Court held cannot lawfully be delegated. 3 MJ at 123–24. He brushes that aside, however, by reference to legislative hearings on this provision that indicate that this was done simply for the "convenience" of the Government. *See* Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1209 (1949). Final Brief at 8–9. Regardless, this Court will give deference to implicit determinations of Congress that statutorily prescribed procedures provide constitutionally satisfactory due process. *Cf. Cooke v. Orser*, 12 MJ 335, 338 (CMA 1982).

■ 20. Even while making his bold and broad assertion, appellant acknowledges that "commanders are not *per se* disqualified from serving as neutral and detached decisionmakers for initial pretrial confinement determinations and search authorization issues." Final Brief at 12. *See, e.g., United States v. Rexroat*, 38 MJ 292 (CMA 1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1296, 127 L.Ed.2d 648 (1994); *United States v. Lopez*, 35 MJ 35 (CMA 1992). Minimizing the anal-

ogy between those roles and the one involved here, however, appellant points out that the former situations "involve pretrial proceedings where the validity of the commander's decision can be raised for examination under the crucible of trial." He argues that, on the other hand, "[s]uch protections do not exist for vacation hearings, where the only two 'checks and balances' are that the final decision is made by the officer exercising general court-martial jurisdiction (who, except for the most egregious cases, will support the recommendations of his subordinate commanders) and the appellate process, which offers only the possibility of relief months, if not years, later." Final Brief at 13.

21. Our view of those "checks and balances," however, is not so denigrating. Appellant has made no direct challenge to the neutrality and detachedness of the general court-martial convening authority so as to perform his statutory role in vacation proceedings. Moreover, that role actually is somewhat more than a mere check and balance; after all, it is that official who actually *makes the decisions* whether a condition of the suspension was violated and, if so, whether the suspension should be vacated. Appellant has offered no basis for his brash broadside on the sincerity and integrity of these officers in fulfilling these responsibilities—that they would unthinkingly follow the recommendations of their subordinates—and it is worthy of no further consideration by this Court.

B

■ 22. Left for our review is appellant's contention that, notwithstanding our discussion above, *his* special court-martial convening authority was not neutral and detached. He points out that his suspension was triggered by a call from this officer, his commander, "invit[ing appellant] to terminate his appellate leave status and return to the ship in order to finish his enlistment and earn an honorable discharge." Final Brief at 2. Additionally, upon appellant's return, several members of the command bent over backwards to smooth the way for him. He argues that this gave the commander a person-

al stake of sorts in appellant and that, when he disappointed that demonstration of faith by going AWOL a month after his return, the commander was too personally involved to be neutral and detached. Indeed, appellant casts his commander "in the image of the trusting and forgiving father who had been wronged by the ungrateful, wayward son." Final Brief at 18. *See generally United States v. Keith,* 3 USCMA 579, 583, 13 CMR 135, 139 (1953) (commander has personal interest in case when accused violated personal order of commander).

23. To support his characterization of his commander, appellant refers to "numerous instances where [the commander]'s objectivity as the presiding officer [of the vacation hearing] is suspect." He notes: "First and foremost" in this regard was the fact that, although the officer "had a legal advisor present," the officer himself called the witnesses, "conducted the examination" of them, and "interchangeably referred to himself in the first and third person." Final Brief at 19. Further, appellant contends that, "by the time [the commander] conducted the vacation hearing, the determination of the underlying misconduct was a 'done deal' because the Captain had just found appellant guilty of the same misconduct at nonjudicial punishment just a few weeks earlier." Final Brief at 19–20. *Cf. In re Murchison,* 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (condemned Michigan procedure that permitted a "one man grand jury" who later sat as judge at a contempt hearing arising out of the same grand jury proceeding—the judge in that context had a personal interest in the outcome).

24. Appellant is correct, of course, that a particular commander who is charged with performing certain functions in the military justice system and who, in doing so, must be "neutral and detached" might fall short of that measure under the facts in a specific case. *See, e.g., United States v. Holloway,* 38 MJ 302 (CMA 1993); *United States v. Ezell,* 6 MJ 307 (CMA 1979); *United States v. Staggs,* 23 USCMA 111, 48 CMR 672 (1974). Indeed, this Court in *Rozycki* expressed concern whether a "fixed bias" of the special court-martial convening authority in

that case was reflected in his report recommending vacation of the suspension of a punitive discharge. 3 MJ at 130.

25. Even if we had similar concerns here, several facts remain unchanged that assuage those concerns. First, "the determination of the underlying misconduct was a 'done deal' " at the vacation hearing, *not* because the hearing officer had "just found appellant guilty of the same misconduct at nonjudicial punishment just a few weeks earlier." Rather, it was because appellant admitted his misconduct at that hearing, just as he had admitted it at the earlier nonjudicial punishment proceeding. *Cf. United States v. Lopez,* 35 MJ at 41 (commander not disqualified as "neutral and detached" when he "draw[s] on knowledge derived as part of routine administrative matters" and not out of revenge or vindictiveness). Second, whoever was the hearing officer, evidence of the command's supportive effort on appellant's behalf surely would have been revealed.

26. Finally, and in this context, it is virtually unthinkable that, with the underlying misconduct established, any hearing officer would have failed to recommend vacation of the suspension. After all, the court-martial had imposed the punitive discharge in the first place because of absence-type offenses (AWOL and missing movement by design). And here, 8 days after suspension of the execution of the discharge and after the command had exerted special effort to ensure appellant's successful return to duty, he again unlawfully absented himself from his ship.

27. In short, neither the evidentiary content of the hearing record nor the recommendation that followed is noteworthy as demonstrating the hearing officer's personal bias, as opposed to his acting in furtherance of his official interest. *See generally United States v. Jeter,* 35 MJ 442, 446 (CMA 1992) (The "accuser" concept of Article 1(9), UCMJ, 10 USC § 801(9), "protect[s] an accused from a vindictive" convening authority pursuing his "personal interest in the case and using his power as a convening authority to obtain this result."). To some extent, we are reassured

in this conclusion by the fact that, although represented by counsel, appellant voiced no objection to his commander's conducting the vacation hearing on the basis of a perceived bias, just as he had failed to do earlier in connection with the proceeding leading to nonjudicial punishment.

## IV

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD and GIERKE concur.

COX, Judge (concurring):

28. In my judgment, the interjection of the special court-martial convening authority into the process, between the servicemember and the general court-martial convening authority, provides a greater assurance of reliability and fairness than does the traditional judge-probationer hearing. *Cf. Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). The Uniform Code of Military Justice provides the necessary framework to protect the servicemember from a vindictive revocation of a suspended sentence. Arts. 72(a) and 23(b), UCMJ, 10 USC §§ 872(a) and 823(b), respectively.

29. To me, the situation is analogous to the Anglo–Saxon, common-law tradition. There, the judge who imposes the probationary sentence is often called upon to decide if the probationer has violated the terms of probation. If there is reason to recuse oneself because of bias, prejudice, or pecuniary interest, then the judge cannot sit. The same rule applies to each special court-martial convening authority. Arts. 72(a) and 23(b) of the Code.

30. I agree with the majority that the special court-martial convening authority who conducted the vacation proceedings here was not disqualified. Accordingly, I concur.